# EXHIBIT 5

GR

Filed
5/16/2024 9:50 AM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Alvi Aimen

**CAUSE NO. 19-DCV-262281**

| | | |
|---|---|---|
| **AZHAR M. CHAUDHARY** *Plaintiff* | § | **IN THE DISTRICT COURT** |
| ***and*** | § | |
| ***ALI CHOUDHRI*** ***Intervenor-Plaintiff*** | § | **458TH JUDICIAL DISTRICT** |
| **v.** | § | |
| **GEORGE M. LEE, THOMAS HUNT, SERENA YU, ROBBY FRANK** ***Defendants*** | § | **FORT BEND COUNTY, TEXAS** |

**ALI CHOUDHRI'S ORIGINAL PETITION-IN-INTERVENTION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, Intervenor-Plaintiff, Ali Choudhri ("Choudhri" or the "Intervenor-Plaintiff')**, and hereby files this Petition-in-Intervention, against **GEORGE M. LEE ("Lee"),** for claims and causes of action, including **(1) Breach of Fiduciary Duty of Loyalty (Against Lee; (2) Fraud and seeks remedy of Constructive Trust** on real property located at: **5007 Tillbuster Ponds Court, Sugar Land, TX 77479**, more specifically described as: LOT I, in Block I of Avalon at Riverstone, Section 7, a subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded in Plat No. 20140069 of the map and/or plat records of Fort Bend County, Texas, more commonly known as: 5007 Tillbuster Ponds Court, Sugar Land, TX 77479 ("Real Property") or proceeds thereof , and in support would respectfully show the Honorable Court as follows:

**OVERVIEW OF THE PETITION**

**Intervenor-Plaintiff, Ali Choudhri** has a justiciable interest in the instant case, and hereby requests a determination that George M. Lee, and his business entities utilized his funds

05/16/2024 AA

ROUTED TO COURT
RT'D TO D. CLERK 05-16-24 AA

for the loan made to **Azhar M. Chaudhary** for the purchase of real property, and that Lee committed fraud. Accordingly, Choudhri seeks the remedy of constructive trust on the subject property.

## PARTIES AND SERVICE

1. Intervenor-Plaintiff, **Ali Choudhri**, is an individual domiciled in Harris County, Texas.
2. Defendant **George M. Lee** has made in appearance in this case by filing an answer through his counsel of record, Thomas Hunt.

## DISCOVERY CONTROL PLAN LEVEL

3. Intervenor requests that the discovery be conducted under Level 3 pursuant to Texas Rules of Civil Procedure 190 and 190.3.

2. Pursuant to Rule 47, Intervenor-Plaintiff states he seeks monetary relief over **$1,000,000.00**.

## JURISDICTION AND VENUE

7. The subject matter in controversy is within the jurisdictional limits of this Court.
8. This Court has personal jurisdiction over this case, because the property subject of this litigation, is located in Fort Bend County, Texas.
9. Venue in this cause is proper in Fort Bend County, Texas pursuant to Section 17.56 of the Texas Business and Commerce Code and under Section 15.001 of the Texas Civil Practice and Remedies Code, because this action involves real property and the property is in Fort Bend County, Texas.

## CONDITIONS PRECEDENT

All conditions precedent have been performed or occurred.

## FACTS

10. On January 12, 2017, Choudhri and Lee signed a trust agreement that created a trust (the "Trust"). The Trust's *res* consisted of several assets including money. Upon information and belief, those assets were used to fund the loan in this lawsuit. *See*, Exhibit A.

> Q. Okay. Well, let's look at it. Did Mr. Choudhri give you 2.17 million?
> A. Yes.
> Q. You accepted the money?
> A. Yes.
> Q. So, how did he give you that money? Was it, was it wired? Did he give you a cashier's check? Did he give you a bucket full of cash? How did he give you that money?
> A. Wire.
> Q. He wired, he wired to you 2.17 million; is that right?
> A. That's right.

*See* Lee Dep. 17:6-18, April 04, 2021. Exhibit B.

11. Breaching his fiduciary duty and perpetuating a fraud on Intervenor-Plaintiff, Lee utilized the funds of Intervenor-Plaintiff for his own benefit, including funding the loan for the property subject of this suit.

Q. Did you give him -- you took his properties.
You foreclosed on his properties. You took the property
and title. Did you give him back his money, or not?
A. I took the property because foreclosure, yes.
Q. You took his property and you took his money,
true?
A. Yes.

*See* Lee Dep. 38:1-7, April 04, 2021. Exhibit B.

12. It is Intervenor-Plaintiff's information and belief that Lee utilized his funds to fund the Note to Azhar Chaudhary and subsequently to fund Serena Yu's acquisition of the property at foreclosure, events that occurred after Lee seized Intervenors funds in early 2017.

13. A relationship of trust existed between Intervenor-Plaintiff and Lee. The Trust Agreement required Lee to maintain control and ownership of the Trust's corpus for Intervenor-Plaintiff's sole benefit. The Trust Agreement prohibited Lee from selling, disposing, or encumbering any Trust assets without Intervenor-Plaintiffs prior written consent.

Q. Do you see the Paragraph 2 that's on the
screen? See what it says, 'A relationship of trust'?
Do you see that?
A. Yes.
Q. Okay. Did you, did you have any inkling about
what that meant?
A. Means we trust each other at that time and no
games to play.

*See* Lee Dep. 20:1-8, April 04, 2021. Exhibit B.

14. 1n violation of his duties as a fiduciary, and with intent to defraud Plaintiff-1ntervenor, Lee used the assets from the corpus of trust for his own benefit.

15. 1mportantly for this intervention, Lee used 1ntervenor-Plaintiff's **<u>Cash and loans secured by Plaintiffs' real estate</u>** required by the Trust Agreement on January 12, 2017, to fund the loan to Plaintiff Azhar M. Chaudhary regarding the subject property.

> **Q. Okay. He gave you via wire transfer 2.17 million; is that true?**
> **A. That's true.**
> **Q. Did you accept that money?**
> **A. I accepted.**
> **Q. Did you use that money?**
> **A. I used it.**

*See* Lee Dep. 18:3-9, April 04, 2021. Exhibit B.

16. Retaining funds given in trust and converting them for personal use is not defensible and a lawsuit is pending in Harris County with **Cause number <u>2020-79998</u>** between 1ntervenor-Plaintiff and Lee and others acting in concert with Lee.

Q. Is there -- I'm looking again at Paragraph 7.
**Do you have any sort of written documentation that allows you to sell or dispose or encumber the properties that are subject to this agreement, any sort of thing in writing at all?**
MR. HUNT: Object to the form.
**A. I do not have it and I don't need it.**
Q. (BY MR. BUZBEE) I understand. I understand **your position. I just want to make sure that there's not some document out there that was written by Ali that gave you the authority to do what you did. And your testimony is, 'I don't have it and I don't need it,' true?**
**A. Yes, you are --**
**Q. Okay.**
**A. -- right, hundred percent.**

*See* Lee Dep. 32:2-17, April 04, 2021. Exhibit B.

17. Since this property is in Fort Bend County, and this lawsuit is adjudicating property on which Intervenor-Plaintiff has a constructive trust, this Intervention is necessary to protect Intervenor-Plaintiff's interests in the property.

18. Intervenor-Plaintiff seeks intervention in this cause without any prejudice to his claims pending in Harris County Cause to preserve his claim of constructive trust on property subject of this lawsuit in Fort Bend County.

## IV. CAUSES OF ACTION

### A. First Cause of Action: Breach of Fiduciary Duty of Loyalty (Against Lee)

19. Intervenor-Plaintiff incorporates by reference all other paragraphs in this petition.

20. Lee owed Intervenor-Plaintiff a fiduciary duty. By the express terms of the Trust Agreement, a relationship of trust existed between Lee and Intervenor-Plaintiff, and Intervenor-Plaintiff was to use all Trust assets solely for Intervenor-Plaintiff's benefit.

21. Lee breached and betrayed that relationship of trust by, among other things:

a. Without Intervenor-Plaintiff's authorization, transferring Trust assets to himself or entities under his control. See Texas Property Code § 113.053(a) ("[A] trustee shall not directly or indirectly buy or sell trust property from or to ... the trustee or an affiliate[.]"); *See, e.g., Ames v. Ames,* 757 S.W.2d 468, 476 (Tex. App. 1988), writ granted (Apr. 12, 1989), aff'd as modified 776 S.W.2d 154 (Tex. 1989) ("if a trustee converts the trust fund or the trust corpus into a different form of property, either taking into himself the title or placing the title in a corporation, the trustee has breached and violated his trust.");

b. Encumbering trust assets without Intervenor-Plaintiff's written consent for Lee's benefit and to Intervenor-Plaintiff's detriment. Id ("The trustee must not make any incidental profits for himself, nor is he to acquire or obtain any pecuniary gain from his high, fiduciary position.");

c. Transferring to himself or entities under his control profits derived from Trust assets, including rent paid by Bartlett tenants. See Texas Property Code § 113.053(a) (requiring trustees to "manage the trust assets solely in the interest of the beneficiaries.").

**B. Second Cause of Action: Fraud**

22. Intervenor-Plaintiff realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

23. Lee acting in concert with unknown others intended to defraud Intervenor-Plaintiff of his property by asserting control over those assets and using them for their own benefit to the detriment of Intervenor-Plaintiff.

24. Lee's conduct as cited above constitutes fraud against Intervenor-Plaintiff and this Court, for which Intervenor-Plaintiff asks this Court to grant a constructive trust on the property subject of this lawsuit after a tracing and accounting of funds seized by Lee.

25. A tracing and accounting of funds will show Defendant Lee's claim in this lawsuit are fruits of fraud against Intervenor-Plaintiff.

**C. Third Cause of Action: Constructive Trust**

26. A constructive trust is an equitable remedy designed to prevent unjust enrichment. *Burrow v. Arce*, 997 S.W.2d 229, 241 (Tex. 1999); see also *Lotus Oil Co. v. Spires*, 240 S.W.2d 357, 359 (Tex. Civ. App.-El Paso 1950, writ ref'd n.r.e.) ("A constructive trust arises when one acquires property with the funds of another under such circumstances that equity and good conscience require that restitution be made by the one so wrongfully acquiring the property with the funds of another hence he is considered to hold the legal title for the one *whose property has been so wrongfully used in its acquisition*.") (emphasis added).
27. On information and belief, Defendant Lee loaned **$400,000.00** of Intervenor-Plaintiff's funds to Azhar M. Chaudhary, and then gave **$400,000.00** of Intervenor-Plaintiff's funds to his domestic partner Serena Yu to bid at auction.
28. Defendants Lee and Yu have acted similarly in Bartlett Auction as fully articulated in litigation pending in Harris County Cause No. **2020-79998**.
29. Allowing Lee to retain or benefit from funds received from Intervenor in trust would be inequitable and would unjustly enrich Lee.
30. A constructive trust is an equitable remedy designed to prevent unjust enrichment.

**REQUEST FOR DISCLOSURE**

31. Pursuant to Tex. R. Civ. P. 194, Intervenor-Plaintiff requests that each Defendant disclose, within 50 days of service of this request, all information or material described in Tex. R. Civ. P. 194.2 (a)-(I ).

**DOCUMENTS TO BE USED**

32. Pursuant to Tex. R. Civ. P. 193.7, Intervenor-Plaintiff intends to use at trial all documents exchanged and produced between the parties including correspondence and discovery responses.

## JURY DEMAND

33. Intervenor-Plaintiff demands a trial by jury on all issues so trial and tenders the appropriate fee with this petition.

## ATTORNEY'S FEES AND COSTS

34. Intervenor-Plaintiff is entitled to an award of attorney fees and costs under Chapter 39 of the Texas Civil Practices and Remedies Code, and for each cause of action and claim under which it is entitled to attorney fees.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED, INTERVENOR-PLAINTIFF RESPECTFULLY REQUESTS:**

That the Court enter an order and judgment as follows:

I) Declaration that Intervenor-Plaintiff is the rightful owner of property subject of this lawsuit;
2) Grant remedy of constructive trust against the property subject of this suit.

All other relief to which Intervenor-Plaintiff is entitled; and prays for general relief and respectfully requests that this Court grant all such other relief to which he is entitled.

Respectfully submitted,

*<u>/s/ Ali Choudhri</u>*
Ali Choudhri
2425 West Loop South,
I I$^{th}$ Floor
Houston, Texas
Houston, TX 77027
Email: ali@jetallcapital.com
Telephone: 713-789-7654
Intervenor-Plaintiff, *Pro se*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document will be served or has been served on all interested parties in accordance with the Texas Rules of Civil Procedure on the May I5, 2024.

*Ali Choudhri*
Ali Choudhri

**CONFIDENTIAL AGREEMENT**

This agreement is made on 12th Jan., 2017 by and between George Lee and Ali Choudhri (collectively the "Parties"), for good and valuable consideration the sufficiency of which is hereby acknowledged.

1. Ali Choudhri will cause funds in the sum of ~~$2,150,000.00~~ 2,170,000.00 to be transferred to George Lee, receipt of which is hereby acknowledged.

2. A relationship of trust exists between the Parties.

3. George Lee shall use the funds received pursuant to paragraph 1 to assign to Ali Choudhri all rights, title and interests in and to the First Liens of the properties, including improvements known as 1123 Bartlett, Houston, TX 77006 (with a legal description of: LTS 1 2 9 10 & 11 & TRS 3A & 8 BLK 13 TURNER N P) and 208 and 210 Avondale Street, Houston, TX 77006 (subdivided into 5 lots with a legal description of: Lt 1, Lt 2, Lt 3, Lt 4, Lt 5, BLK 1 Avondale Avenue Landing or The West 54 feet of Lot Two (2) and the adjoining East 38 feet of Lot Three (3) in Block Eight (8), of Avondale, an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 2, Page 32 of the Map Records of Harris County, Texas) (collectively the "Subject Properties") as further described in Exhibit A.

4. The first lien for 1123 Bartlett is in the principal sum of $1,500,000. The first lien on 208 and 210 Avondale is in the principal sum of $500,000 (collectively the "First Liens")

5. George Lee agrees to maintain 100% control and ownership of the Subject Properties and First Liens in trust for the benefit of Ali Choudhri, except as otherwise provided herein.

6. ~~George Lee agrees that he shall not foreclose or cause to be foreclosed the First Liens interests or file a substitute trustee deed of the Subject Properties upon a foreclosure except with the prior written consent of Ali Choudhri.~~

7. George Lee shall not sell or dispose or encumber the Subject Properties without the prior written consent of Ali Choudhri.

8. Ali Choudhri may select and direct the trustee for foreclosure.

9. ~~If and when the First Liens of the Subject Properties are foreclosed upon, George Lee shall convey all title and interest in the Subject Properties to Ali Choudhri and/or his assigns as directed by Ali Choudhri in writing to George Lee.~~

10. George Lee shall cause Subject Properties to be posted for foreclosure 21 days prior to the 1st Tuesday of February 2017 or another date if and when requested by Ali Choudhri in writing.

11. This Agreement shall be binding upon and inure to the benefit of the heirs, legal representatives, successors and assigns of the Parties; provided, however, George Lee shall not assign his rights under this Agreement to any third party or affiliated party without the prior written approval of Ali Choudhri.

12. Ali Choudhri and George Lee covenant and agree that neither Ali Choudhri nor George Lee shall, directly or indirectly, disclose the terms or substance of this Agreement, or the nature of the negotiations leading to this Agreement, to any person or entity.

13. ~~In addition to the acts and deeds recited in this Agreement and contemplated to be performed, executed, and/or delivered under this Agreement, George Lee agrees to hereafter perform, execute and/or deliver or cause to be delivered, executed and/or delivered all further acts, deeds, agreements and assurances reasonably necessary to consummate the transactions contemplated hereby.~~

14. The Agreement and the exhibits attached hereto set forth all agreements between Ali Choudhri and George Lee as it relates to the Subject Properties, and all prior negotiations or agreements are merged into this Agreement. No modification hereof or subsequent agreement relative to the subject matter of this Agreement shall be binding unless in writing and signed by both Parties hereto.

Date: Jan 12, 2017

**ALI CHOUDHRI**

By: ______________________

Ali Choudhri, Individually

**GEORGE LEE**

By: ______________________

George Lee, Individually

EXHIBIT B

# George Lee

## Condensed Transcript Report

**Lee, George** **2021-04-30**

| | |
|---|---|
| Our Designations | 00:08:22 |
| **TOTAL RUN TIME** | **00:08:22** |

oncue

ID: GL

CAUSE NO. 2020-79998

ALI CHOUDHRI ) IN THE DISTRICT COURT OF )

VS. ) ) HARRIS COUNTY, T E X A S

GEORGE LEE, CPATE FAMILY ) INVESTMENTS, LLD AND )

BEARSTONE PRIVATE ) INVESTMENTS, L.L.C. ) 125TH JUDICIAL DISTRICT

----------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF

GEORGE M. LEE

APRIL 30, 2021

(REPORTED REMOTELY)

----------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF GEORGE M. LEE, produced as a witness at the instance of Mr. Anthony G. Buzbee, and duly sworn, was taken in the above-styled and numbered cause on April 30, 2021, from 10:00 a.m. to a.m., before Gina D. Ellis, CSR in and for the State of Texas, reported by machine shorthand, at Thomas L. Hunt & Associates, 4635 Southwest Freeway, Suite 900, Houston, Texas, pursuant to the Texas Rules of Civil Procedure and the First Emergency Order regarding the COVID-19 State of Disaster.

A P P E A R A N C E S

COUNSEL FOR PLAINTIFF:
MR. ANTHONY G. BUZBEE
MR. PETER K. TAAFFE MR. JASON WILLIS
The Buzbee Law Firm 600 Travis, Suite 7300
Houston, Texas 77002 (713) 223-5393
tbuzbee@txattorneys.com ptaaffe@txattorneys.com
jwillis@txattorneys.com - AND -
MR. BENJAMIN GUBERNICK Gubernick Law
105 Detering, Unit A Houston, Texas 77007
(713) 977-3447 ben@gubernicklaw.com

COUNSEL FOR DEFENDANTS:
MR. THOMAS L. HUNT
Thomas L. Hunt & Associates 4635 Southwest Freeway, Suite 900
Houston, Texas 77027 (713) 977-3447
tom@thomaslhuntassociates.com

VIDEOGRAPHER/ZOOM HOST: Jesus Garcia
ALSO PRESENT:
Ali Choudhri



INDEX PAGE

Appearances.......................................... 2
Stipulations......................................... 4
GEORGE M. LEE
EXAMINATION BY MR. BUZBEE....................... 6
Signature and Changes.............................. 39
Reporter's Certificate.............................. 41

EXHIBITS

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Exhibit A Property Description; Confidential Agreement.................. | 14 |



S-T-I-P-U-L-A-T-I-O-N-S

IT IS STIPULATED and agreed by and between counsel for the respective parties hereto that the deposition of the witness named in the caption hereto may be taken at this time and place before the officer named in the caption hereto; and that said deposition, or any part thereof, when so taken may be used on the trial of this case with the same force and effect as if the witness were present in court and testifying in person.

IT IS FURTHER STIPULATED by and between counsel for the respective parties hereto that the witness shall read a copy of this deposition, sign the original signature page before any notary public, and forward the original signature page, together with corrections, if any, to the reporter. Said signature page and errata sheet, if any, will be attached to the original and filed with the attorney of record. If the original signature page is not returned to the reporter within 20 days, the original deposition will be filed unsigned, pursuant to the Texas Rules of Civil Procedure.



P-R-O-C-E-E-D-I-N-G-S

THE REPORTER: Today's date is April 30, 2021. This is the oral and videotaped deposition of George Lee. It is being conducted remotely in accordance with the First Emergency Order regarding the COVID-19 State of Disaster, Paragraphs 2.b. and c. The witness is located at Thomas L. Hunt & Associates, 4635 Southwest Freeway, Suite 900, Houston, Texas. I am administering the oath and reporting the deposition remotely by stenographic means from my home residence in Houston, Texas. My business address is 11706 Playa Court in Houston, Texas.

GEORGE M. LEE,
having been first duly sworn, testified as follows:

EXAMINATION BY MR. BUZBEE:
Q. Sir, would you please tell the us your name?
A. George M. Lee.
Q. How old are you, sir?
A. 76.
Q. And can you tell us your driver's license number? I only ask because we're gonna do a little background check. I want to make sure I do it with the right person.
A. 10153384, Texas.
Q. Got it. And just so you know, Mr. Lee, I won't, I won't obviously disclose that to anybody. I just need that for my own purposes. What is your address?
A. Good.
Q. Can you tell us your address, please?
A. No. 4, Wintermere Lane, W-I-N-T-E-R-M-E-R-E --
Q. Have you ever been arrested?
A. -- Houston, Texas 77063.
Q. Thank you. I'm sorry to interrupt you. I won't -- I'll try not to interrupt you. It's kind of weird on Zoom. So sometimes you probably will, as we go



through this, you may pause; and I may interrupt you; and I don't mean to do that. Have you ever been arrested?
A. No.
Q. Okay. Have you ever been convicted of any crime?
A. No.
**Q. What do you do for a living?**
**A. Real estate investment and loan people money.**
**Q. Okay. So, you invest in real estate; and you loan folks money?**
**A. Yes.**
**Q. Okay. Do you do that personally or through some sort of business?**
**A. Personally.**
Q. Do you have any particular business that you typically would loan money with or invest with?
A. Mainly in real estate.
**Q. Okay. So, essentially, when you're loaning folks money, you're telling me that you're loaning them money as George Lee?**
**A. Yes.**
**Q. Individually?**
**A. Yes.**
Q. Do you do business with any banks in our town?



A. You are talking about now or in the past?
Q. Let's just focus on the last five years. The transaction that we're here to talk about I think was in January of 2017. So I think -- let's just focus our attention on the last five years. Do you do business with -- have you done business with any bank in our town in the last five years?
A. Yes.
Q. Which banks do you like to use?
A. Frost Bank, East West Bank, Prosperity Bank, and IBC Bank.
Q. All right. Let's take each of those in turn. What kind of business have you done with Frost?
A. Real estate investment.
Q. Just loans on pieces of real estate?
A. Yes.
Q. Okay. And I think you mentioned Prosperity Bank. Same thing?
A. Yeah, for all of them.
Q. For all of the three or four that you referenced?
A. Yes.
Q. Is that right? Okay. Do you serve on any boards, any sort of boards of any sort of institution in the last five years?



A. No.
Q. Any sort of charitable activities you've been involved in in the last five years?
A. No.
Q. Are you involved in any sort of organizations in our town in the last five years?
A. No.
MR. BUZBEE: Pete, would you put on the screen Exhibit A.
MR. TAAFFE: Jason has actually got that up and he'll share his screen.
MR. BUZBEE: Jason, please. Thank you. I didn't know Jason was engaged, but thank you.
**Q. (BY MR. BUZBEE) Do you know Ali Choudhri? Do you know him?**
**A. Yes, I know him.**
Q. You know he's my next-door neighbor, right?
A. You are which -- he has moved many times.
Q. Well --
A. Which one y'all talking about?
Q. I don't know. Where do you, where do you think he lives, Mr. Lee?
A. Right now, probably, I think River Oaks, the expensive house.
Q. On River Oaks Boulevard?

A. Yes, I think so.
Q. Yeah. He lives right next door to me. Did you know that?
A. I didn't know.
**Q. Yeah. Okay. How long have you known this man, Ali Choudhri?**
**A. I loan him money starting from something like 2013.**
**Q. 2013?**
**A. Yeah, as far as I can remember.**
**Q. Okay. Is that how you met him by you loaning him money?**
**A. Yes.**
Q. Okay. Tell me about, tell me about the first time that you met and what that transaction was, please.
MR. BUZBEE: Take that down, Jason.
A. Somebody told me --
Q. (BY MR. BUZBEE) I'm sorry, Mr. Lee.
MR. BUZBEE: Take that down.
Q. (BY MR. BUZBEE) Okay. Go ahead, Mr. Lee. Sorry.
A. Somebody told me another real estate developer needs money, a hard money loan. So, I met with him; and I started to loan him money. And I trusted him.
Q. Okay. Do you recall how much you loaned him



back in 2013?
A. I don't remember the total until the very end. It's a lot. It's $10 million.
Q. So, at some point you're telling us that he owed you $10 million?
A. Yes. Exactly.
Q. Was that, was all that principal; or was some of that interest?
A. That's principal.
Q. Okay. And when you say, when you use the term 'hard money loan,' can you explain to us what that means?
A. It's just real estate with a bit of a high interest rate. Funding is fast.
Q. Okay. And when you say 'hard money loan,' are you talking about a loan against a piece of property?
A. Yes.
Q. Okay. So, in other words, there's some sort of collateral involved?
A. Yes.
Q. Some sort of security so -- you know, you're making the loan; but at least if things go bad you still have some security?
A. Yes.
Q. And this happened, you're saying, back in 2013?



A. Yes.
Q. And your testimony is, is as it went along, at some point you believe he owed you at least $10 million?
A. It's not I believe. I have in writing he owes me 10 million, personal guarantee the loan.
Q. Okay. And how much do you believe he still owes you?
A. We had agreement one time he owe me 7.8 principal plus interest. We agreed one time. That's August the 1st, 2018.
Q. Okay. So, I just want to be clear, Mr. Lee, because, obviously, I wasn't around for all this stuff; and I'm just trying to figure it out. You're telling me that as of August 2018, is that what you said?
A. Yes.
Q. Your testimony is he owed you how much in principal and how much in interest?
A. Probably seven point -- I don't --
Q. No probably.
A. -- exactly know.
Q. I need to know exactly what you claim he owes you.
A. 7.8 million principal.
Q. Uh-huh.
A. Plus another probably 4 million interest.



Q. Okay. 7.8 million in principal and at that point 4 million in interest?
A. Yes.
Q. And you're saying that was the case as of August 2018?
A. August -- yeah.
Q. And you have, you say you have that in writing?
A. No. We agreed. He refused to sign. You know Ali sometimes play a little bit games.
Q. Well, see, I don't, see, I don't know that. And so, I'm just asking you. Do you have that in writing?
A. Okay. I'm telling you.
Q. Okay. My question is, sir, if you don't mind, do you have that in writing?
A. The 7.8 not exactly in writing; but, we have agreement he will pay a month. I talk to him. He agreed it, but he never performed.
Q. You're saying he agreed orally, like just when y'all were talking?
A. Yes.
Q. Okay. So, just so I'm clear, your testimony is, Mr. Lee -- and, of course, this is the first time I've ever met you; and it's nice to meet you. But, your testimony is as of August 2018 your testimony under oath

is Ali Choudhri, and I may be butchering my next-door neighbor's name, owes you 7.8 million in interest -- or in principal and 4 million in interest? Is that your testimony?
A. Yes.
Q. And you agree and concede that that's not in writing anywhere, true?
A. True.
Q. And your testimony is that's just what he agreed he owed you; is that right?
A. Yes. My attorney involved with this transaction. We're talking. And my attorney, Tom Hunt, was involved with it.
Q. Uh-huh. And I, of course, I don't want to know anything about what your attorney said to you or you said to him. But, it sounds like your testimony is that your attorney, Mr. Hunt, will support your belief?
A. Yes.
Q. Okay.
MR. BUZBEE: Now, go back to Exhibit A, Jason, please.
(Exhibit A was marked for identification.)
**Q. I want to go back to January of 2017. We've put on the screen Exhibit A to your deposition. Did you sign this document?**



**A. Yes, I did.**
**Q. I'm trying to figure out the purpose of it. Can you help us understand? What was the purpose of this agreement?**
**A. The purpose of this one, it's a foreclosure agreement.**
Q. Okay. Help me -- because I'm not very well **versed in these kind of things. What do you mean by that?**
A. Ali at that time, a lot of creditors go after him; and he default on my loan. At that time he said he has a lot of creditors go after him. He do not want to lose the control of some of the property. He has the title, borrow the money from me. He said, 'Can you foreclose it,' or he will foreclose it, and hold on his behalf.
Q. Okay. So --
**A. But this is a foreclosure agreement. I never seen this agreement until the day he showed up with me. He never gave me to review. That's the reason there's a lot of the lines I strike out. I seen that one right on the spot.**
Q. Uh-huh.
A. And he's that kind of person. He force you, push you, to sign any agreement the way he wants it.



Q. Okay. I hear, I hear what you're saying; but I want to make sure. No. 1, you did sign the agreement, correct?
A. Yes, I did.
**Q. That is your signature at the bottom, true?**
**A. True.**
**Q. Your initials appear on the agreement multiple times, right?**
**A. That's I negotiate right on the spot.**
**Q. I understand. I see your initials one, two, three, four times and then your signature, true?**
**A. True.**
**Q. When you signed this agreement you intended to live up to it, right?**
**A. Yes.**
Q. You didn't, you didn't do this as any sort of joke or fraud, right?
A. Ali is doing a fraud, not me.
Q. Okay. Sir, I appreciate that. I didn't, **actually, I didn't ask you that. I just wondered, you intended to perform under this agreement when you signed it; is that right?**
**A. Yes.**
**Q. Okay. So, do you know what you agreed to do when you signed this in January of 2017?**



**A. Of course.**
**Q. Okay. Did you live up to the agreement?**
**A. Yes.**
**Q. Did you follow the agreement to the letter?**
**A. Yes.**
**Q. Okay. Well, let's look at it. Did Mr. Choudhri give you 2.17 million?**
**A. Yes.**
**Q. You accepted the money?**
**A. Yes.**
**Q. So, how did he give you that money? Was it, was it wired? Did he give you a cashier's check? Did he give you a bucket full of cash? How did he give you that money?**
**A. Wire.**
**Q. He wired, he wired to you 2.17 million; is that right?**
**A. That's right.**
Q. So the agreement was that he -- and I'm just reading from it, because, obviously, I wasn't there. But --
A. Nobody's there.
Q. Well, you and he were there.
A. That's right.
Q. And that's why I'm asking you these questions,

right?
A. Yes.
**Q. Okay. He gave you via wire transfer 2.17 million; is that true?**
**A. That's true.**
**Q. Did you accept that money?**
**A. I accepted.**
**Q. Did you use that money?**
**A. I used it.**
**Q. Okay. Now, he gave you that money. What did he get in return?**
**A. He wants to foreclose the property. Read the documents. That's what we agreed to do.**
**Q. Well, I'm looking at -- first off, the Paragraph 2 says, 'A relationship of trust exists between the Parties.' Do you know what that means?**
**A. Yes, I know fully.**
Q. Tell me what that means from your point of view as somebody who signed this document.
A. Means that Ali is not playing games. I'm not playing games. That's exactly what we agreed to do and no more tricks.
Q. And do you understand that when you say, 'A relationship of trust exists,' that means that you have a duty to him?



A. He has a --
MR. HUNT: Object to the form of the question.
A. He has a duty to me.
MR. HUNT: George --
A. He borrow the money from me.
MR. HUNT: George, let me finish my objection.
THE WITNESS: Okay.
MR. HUNT: Objection --
Q. (BY MR. BUZBEE) Let your lawyer --
MR. HUNT: -- form.
Q. (BY MR. BUZBEE) Let your lawyer object. Okay? He's gonna object, like, form, because that's what the rules allow. And unless your -- my colleague tells you not to answer, you can go ahead and answer. Okay?
A. Yes, sir.
Q. Okay.
A. I trust at that time.
Q. Okay. And I hear you from -- you're saying, 'Look, this guy owed me a duty.' I'm just asking about **what duty you owed. Did you realize that you owed -- there was a relationship of trust between you and Ali?**
**A. Not of trust. That is the foreclosure agreement.**



**Q. Do you see the Paragraph 2 that's on the screen? See what it says, 'A relationship of trust'? Do you see that?**
**A. Yes.**
**Q. Okay. Did you, did you have any inkling about what that meant?**
**A. Means we trust each other at that time and no games to play.**
Q. All right. Did you understand that you were gonna be a trustee of these properties?
A. Never --
MR. HUNT: Object.
A. -- agreed --
MR. HUNT: Object to the form. Let me object first.
THE WITNESS: Okay.
A. Never agreed with that.
Q. (BY MR. BUZBEE) You don't agree with that?
A. Not agree at all.
Q. Okay. And I, and I know it's emotional for you, Mr. Lee. And I don't -- I'm not trying to, you know, poke you or anything. I'm just trying to ask -- there were only two people who signed this agreement; and according to you, there was only two people in the room. And I wasn't there. So I'm entitled to ask you



what you thought about what you signed.
A. All right. We --
Q. I'm asking you did you understand or did you believe that you were trustee of these properties?
A. No, I do not agree with that at all.
Q. Okay. Did you understand that Mr. Choudhri was a beneficiary of this trust property?
A. That's not a trust. It's a foreclosure agreement. I want to emphasize that.
Q. Yeah.
A. I never signed a trust agreement with him.
Q. I understand.
A. We just have a trust between the two of us.
Q. Right.
A. And I'm sorry to tell you, I lost that trust.
Q. Okay. And I hear you, Mr. Lee. And --
A. Okay. Thank you.
Q. I just want to understand what you thought was going on. The title of the document is called 'Confidential Agreement,' right?
A. You are right.
Q. Okay. It doesn't say 'Foreclosure Agreement,' does it?
A. It meant a for -- everything we talk about is foreclosure.

Q. I understand. But it doesn't say that, does it?
A. Yes, you are right.
Q. Thank you. And so, what were the, what were the properties that were subject to this Confidential Agreement, can you tell me that?
A. The Bartlett, it's apartments. And one Avondale tract of land I think is 20,000 square feet.
THE REPORTER: I'm not understanding what he's saying.
A. But that's all I remember.
Q. (BY MR. BUZBEE) No, it's okay, Mr. Lee. I think the -- I think our court reporter is saying that -- let me see if I can clarify it a little bit. The two pieces of real estate that were subject to this agreement was 1123 Bartlett; is that right?
A. Yes.
Q. And then there was vacant land at 208 and 210 Avondale; is that true?
A. That one, I think -- I don't, I don't remember. It's five years ago. We only involve, it's one tract of the land concerning with apartments. The other one is the one I have the title. Have nothing to do with this one. I might be mistaken, because I never seen this agreement. And Ali just brought it over for me to sign.



We spent about 20, 30 minutes. We finished.
Q. Okay.
A. We never read detail, what exactly is involved, which property. And I believe, I might be to -- I don't know exactly; but that one might be mistaken, the Avondale.
Q. Okay. Well, let's -- what I would like to do, Mr. Lee, is look at Paragraph 3 of the document that's on the screen. And I know it's hard --
A. Okay.
Q. -- it's hard to read. But what I'm reading, **and correct me if I'm wrong, is that the property, that is, the real estate that was subject to this, quote, Confidential Agreement included 1123 Bartlett. Do you see that there?**
**A. Yes.**
**Q. And also 208 and 210 Avondale. Do you see that?**
**A. Yes.**
**Q. Okay. Those were the properties that were subject to this Confidential Agreement; isn't that true?**
**A. That's true.**
Q. I mean, that's what the agreement shows, right?
A. I did not read carefully. I told you the --
Q. Well --



A. -- circumstances.
Q. -- Mr. Lee --
A. I did not read carefully, because I never seen these documents --
Q. Well --
A. -- until the day we talked to each other.
Q. Mr. Lee --
A. He brought from his pocket. That's the agreement he asked me to sign.
Q. I'm sorry, I interrupted you; and I don't mean to. But, Mr. Lee, your initials appear four times on this document; and your signature is there. Remember we talked about that?
A. Yes.
Q. Okay. And you're a smart guy. I mean, you're a guy that's loaning millions of dollars to people. You obviously know what you're doing, right?
A. Yes.
Q. Okay. So, you're not gonna suggest that, 'Oh, I just didn't read this; and I just took $2 million or more; and, you know, I didn't know what I was agreeing to'? You're not suggesting that, are you?
A. No.
**Q. Okay. So let's focus on the document that you signed in 2017. It included 1123 Bartlett, true?**



**A. Yes.**
**Q. And 208 and 210 Avondale, both in Houston, true?**
**A. Yes.**
**Q. Who owns Bartlett at this moment in time?**
**A. Ali Choudhri.**
Q. Sir, I've looked on the property records. It shows you as the owner. How is that true?
A. After foreclosure it's mine. Before foreclosure it belongs to him.
Q. Uh-huh. And you foreclosed on it?
A. Ali Choudhri elected Stephanie Roman to foreclose it.
Q. Let me, let me clear. We'll get to that point. **But, would you concede that right now you claim you're the owner of 1123 Bartlett?**
**A. Today, right now, I'm the owner.**
**Q. Yeah. You tell -- your position to the ladies and gentlemen of this jury that will watch this tape is that you are the rightful owner of 1123 Bartlett; is that true?**
**A. That's true.**
Q. Okay. Now tell me how that came about. How is it that you sign this agreement. You took $2.17 million. You agreed that Ali Choudhri would have all

the rights and interest in 1123 Bartlett. And now all of a sudden you claim that you own it. Tell me how that works.
A. It's works because he gave me 1.5 million. His attorney foreclosed and I have to bid. I was over there with him -- with her. $4 million. 1.2 -- 1.5 belongs to him. 2.5 million belongs to me. I foreclose it. I own the title. If he can pay me the $4 million back, he owns the property. I told him many times. He refuse to do that.
Q. Did you tell him that you were gonna foreclose and list the -- and post the property?
A. He foreclosed with my consent. I didn't foreclose.
Q. Okay. So help me understand. So you're saying that he foreclosed on the property?
A. He got Attorney Stephanie Roman. He employed her to foreclose the property. Hopefully, we gonna have only bid 1.5 million. Unfortunately, his creditor over there overbid. Finally reached 4 million. Then we bid 4 million to get the property back.
Q. And so, after all this was said and done, you ended up with the property in your name?
A. Yes.
**Q. How much is the property worth?**



**A. About 4 million.**
Q. 4 million?
A. Yes. I told Ali pay me the 4 million. I'd deed it back to him. Many times. He refused to do it.
Q. Let's make sure I understand your testimony **because it may, it may be relevant later. Your testimony is, is that the property at 1123 Bartlett, when you foreclosed on it, when it was foreclosed, was worth 4 million?**
**A. Yes.**
Q. What about the property at Avondale, the two, the two addresses at Avondale that are subject to this agreement, who owns those now?
A. I foreclosed. I sold to another person.
Q. What other person was that?
A. Matt -- it's -- I don't remember full name. But, I sold it to someone; and I gave $1 million credit to Ali.
Q. Well, how much did you sell the properties for?
A. I sold the tract. I loan him the money in question for 1 million. I gave him a million credit. The other small tract, I own the title. I sold it for 680,000. I bought it for 665,000 two or three years ago before I foreclosed. I owned it -- I sold it.
Q. So just so I'm clear, are you talking about --



we're talking about 208 and 210 Avondale, right?
A. I don't remember the street address. One is a big tract. I have $1 million loan. The other tract is adjacent to that tract. Ali wants to put two here together. So, I bought it on his behalf. I own the title. I think he has option to buy once he got the money. Thus, I paid 665,000. I sold it for 680,000.
Q. Uh-huh. So, your testimony is both of those, 208 and 210, and you're not clear about, you know, what is what, but both of those are now -- one is sold to a third party and one of them you owned and then you finally sold? Is that what you're saying?
A. Both the tract sold it to one person and developed into apartments.
Q. Can you tell us who that person is?
A. His first is Matt. It was a long name. It's a Greek name.
Q. Uh-huh.
A. Urban Genesis. The company name is Urban Genesis.
Q. And what role do you have in that company?
A. I don't have anything to do with that. I'm a limited partner. I invest some money into the deal.
Q. So, you do have some sort of ownership interest in that entity?



A. Limited partner interest.
Q. Okay. Let's make sure we're clear about this, because, you know, I can easily find this out. In fact, I may already know it. I'm just asking you. What interest do you have, percentage interest do you have in that entity that purchased 208 and 210 Avondale?
A. I have $500,000 limited partner investment into that project.
Q. Okay. So, what we know is, is that with regard to 1123 Bartlett and 2008 and 210 Avondale, you either ended up owning them outright or own some percentage of those properties through corporate entities; is that right?
A. Not right.
Q. What?
A. Not right.
Q. All right. Correct me, because I'm probably not smart enough to understand it. Help me understand where I'm missing it.
A. Okay. Bartlett I own outright under my name, George M. Lee.
Q. Right.
A. Avondale, one of the property I foreclosed; and one of the property I own from the very beginning. Ali has option to buy. So, I sold both the tract to Matt

from Urban Genesis company for 1.68 million. I took the 680,000, applied to my tract. $1 million I give back full credit to Ali.
Q. But let's -- don't leave off the part where -- your ownership interest in Urban Genesis.
A. I have $500,000 limited partner investment into his company, joint venture in whatever he call it.
Q. Right. This Matt fellow you're talking about?
A. Matt, yeah.
Q. Yeah, yeah. He's your partner?
A. He's not my partner. He is the developer. I'm the limited partner investor.
Q. Right. But, you're a limited partner with Matt, right?
A. Yes.
Q. Okay.
A. Yes.
Q. He's your partner, right?
A. Whatever -- I don't know the legal name of that. He's the developer.
Q. All right.
A. I'm the limited partner for the project.
**Q. Right. Do you look -- can you see on the screen Paragraph 7?**
**A. Yes.**



**Q. Tell me what that says there.**
**A. George Lee shall not dispose and contract --**
**Q. Let's read it clearly now. Let's make sure we include all the words.**
**A. 'George Lee shall not sell or dispose or encumber the Subject Properties without the prior written consent of Ali Choudhri.'**
Q. Have you received any written consent of Ali Choudhri to do anything with those properties?
A. That's because I foreclosed the property.
Q. I didn't -- sir --
A. He has no legal right whatsoever left. I think Ali's lawsuit with Matt, Urban Genesis, he lost it.
Q. Okay.
A. He sued them.
Q. After --
A. This is only applied before my foreclosure. That's the reason this is a foreclosure agreement.
Q. Uh-huh.
A. Once I foreclose, I own the title. I don't need anybody's consent to do anything I want to.
Q. Okay. I'm gonna, I'm gonna try to focus on the question I asked, not -- you know, I understand your position; and I appreciate it; but that's not what I asked you.



A. Okay.
Q. Is there -- I'm looking again at Paragraph 7. **Do you have any sort of written documentation that allows you to sell or dispose or encumber the properties that are subject to this agreement, any sort of thing in writing at all?**
MR. HUNT: Object to the form.
**A. I do not have it and I don't need it.**
Q. (BY MR. BUZBEE) I understand. I understand **your position. I just want to make sure that there's not some document out there that was written by Ali that gave you the authority to do what you did. And your testimony is, 'I don't have it and I don't need it,' true?**
**A. Yes, you are --**
**Q. Okay.**
**A. -- right, hundred percent.**
Q. Okay. Let's take a five-minute, let's take a 10-minute break, Mr. Lee. Okay?
A. Thank you.
Q. Yes, sir.
THE VIDEOGRAPHER: Going off the record at

(Short Break.)
THE VIDEOGRAPHER: Going on the record at



MR. BUZBEE: Jason, if you don't mind, put up Exhibit A again in front of Mr. Lee. I want to talk about Paragraph 5.
**Q. (BY MR. BUZBEE) Mr. Lee, I'd like you, sir, to look very carefully at Paragraph 5. Can you see it?**
**A. Yes, I can.**
**Q. It says, and correct me if I misread it, 'George Lee agrees to maintain -- 100% control and ownership of the Subject Properties and First Liens in trust for the benefit of Ali Choudhri, except as otherwise provided herein.' Did I read that correctly?**
**A. You are correct.**
**Q. Okay. Did you agree to that?**
**A. I agreed with that.**
**Q. And you signed the document, right?**
**A. Yes, you are right.**
**Q. Okay. Do you understand what that meant when you signed that document?**
MR. HUNT: Object to the form.
**A. Yes, I fully understand.**
Q. (BY MR. BUZBEE) Okay. And the properties were in trust, right?
MR. HUNT: Object to the form.
A. After foreclosure, there's no trust.

Q. (BY MR. BUZBEE) Yeah.
A. Before the foreclosure, I won't do anything -- I won't allow people to know what's going on because he has creditor behind him.
Q. I just, I'm just wondering -- and, again, **you're a sophisticated real estate investor, sophisticated man, well-versed in many things. Did you understand at least what Paragraph 5 meant?**
MR. HUNT: Object to the form.
**A. Yes, I do.**
Q. (BY MR. BUZBEE) Okay. And then, of course -- incidentally, so there were -- how many different foreclosures were involved with regard to the properties listed in exhibit -- or Paragraph 3? Three different properties?
A. Three times.
Q. You did three different foreclosures?
A. Yeah. We did three times.
Q. All right. Who were the -- which lawyers did you use for those foreclosures?
A. Okay. Let me explain to you.
Q. Yeah.
A. First time, Stephanie Roman hired by Ali foreclosed Bartlett. I was there with her. Because the creditor showed up, they bid this property up to 4



million. And we all agreed. I bid 4 million and get the property back under George M. Lee name. That's the first one.
The second one Stephanie Roman foreclosed Avondale. Those group of people showed up. They're the creditor of Ali. They showed up, bid up to 1.5 million or 2 million. I don't remember. But because technical legal question and also we overbid it somehow -- I think technical question, Stephanie Roman withdraw it and never report the documents. Then we had a meeting between Stephanie Roman, myself, Ali, and Tom Hunt. We agreed I will hire Tom Hunt to foreclose the property. Then we did. That's the third time. Only applied to the $1 million the Avondale property. And we bid $4,000 because the creditor didn't showed up. So, we only bid 4,000. We got the property back under my name. That's exactly what happened.
Q. And that was Mr. Hunt that was involved in that last transaction?
A. Yes.
Q. Is that your lawyer today?
A. You're right.
Q. He's there in the room with you?
A. You are right.
Q. He's defending you in this case?



A. Yes.
Q. You were able to get the property for 4,000, you said?
A. Yeah. But I gave a million dollars credit back to Ali. I didn't cheat anybody.
Q. Okay. I mean, that's --
A. I'm an honest man.
Q. Okay. Mr. Lee, I hear you and I, and you -- I mean, that's -- you're entitled to say those kinds of things. But, ultimately, the decision-maker is 12 people from Harris County jury. You realize that, right?
A. Yes, I do.
Q. Okay.
A. You're right.
Q. I want to make sure that I understand your position. You got the property for $4,000 --
A. Yes.
Q. -- is that right? It's now in the name of this entity that you are a partner in, right?
A. Yes.
Q. Okay. Did you give Mr. Choudhri his $2.17 million back?
A. I gave him $1 million credit for the loan. He owed it to me.



Q. Sir --
A. I didn't cheat him a penny.
Q. I hear you and I appreciate you telling me that. But this is, this is a very discreet agreement that deals with two particular, or I guess three properties. I'm not asking about any other dealings you have with Mr. Choudhri that are separate from this. I'm talking about this particular agreement. Did you give him his $2.17 million back?
A. No. I gave him back the 2 million. One year later --
Q. Uh-huh.
A. -- was the 2425. He owes me 3.5 million. We settled out -- that lien. I give him a lien release. That one is in writing, specifically say $2 million out of 3.5 million is applied to the credit for Avondale and the Bartlett. That one we do have in writing; and everybody signed it, agreed upon.
Q. I hear you, sir. I'm just focused on this agreement and these properties. I'm not talking about any other dealings you had with Mr. Choudhri that you claim you had or what he claim -- you claim he owes you.
A. Okay.
Q. Did you give him --
A. I understand.

**Q. Did you give him -- you took his properties. You foreclosed on his properties. You took the property and title. Did you give him back his money, or not?**

**A. I took the property because foreclosure, yes.**

**Q. You took his property and you took his money, true?**

**A. Yes.**

Q. Hmm. Okay. I think that's all I need to know.

MR. BUZBEE: Pass the witness.

MR. HUNT: We reserve ours.

THE VIDEOGRAPHER: Is that everybody?

MR. TAAFFE: That's it.

THE VIDEOGRAPHER: Okay. Going off the record at 10:49 a.m.



I, GEORGE M. LEE, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

__________________________________

GEORGE M. LEE

THE STATE OF __________)

COUNTY OF _____________)

Before me, ___________________________, on this day personally appeared GEORGE M. LEE, known to me (or proved to me under oath or through ___________________________) (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __________ day of ________________________, __________.

__________________________________ NOTARY PUBLIC IN AND FOR THE STATE OF ____________________ COMMISSION EXPIRES: _____________



CHANGES AND SIGNATURE

WITNESS NAME: GEORGE M. LEE DATE: APRIL 30, 2021

PAGE LINE CHANGE REASON

____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________
____________________________________________________________



CAUSE NO. 2020-79998

ALI CHOUDHRI ) IN THE DISTRICT COURT OF )

VS. ) ) HARRIS COUNTY, T E X A S

GEORGE LEE, CPATE FAMILY ) INVESTMENTS, LLD AND )

BEARSTONE PRIVATE ) INVESTMENTS, L.L.C. ) 125TH JUDICIAL DISTRICT

REPORTER'S CERTIFICATION

ORAL AND VIDEOTAPED DEPOSITION OF GEORGE M. LEE

APRIL 30, 2021 (REPORTED REMOTELY)

I, Gina D. Ellis, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, GEORGE M. LEE, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on ________________________ to the witness or to the attorney for the witness for examination, signature and return to me by ________________________;

That the amount of time used by each party at the deposition is as follows:

MR. ANTHONY G. BUZBEE - 00 HOURS:39 MINUTES MR. PETER K. TAAFFE - 00 HOURS:00 MINUTE(S)

MR. JASON WILLIS - 00 HOURS:00 MINUTE(S)

MR. BENJAMIN GUBERNICK - 00 HOURS:00 MINUTE(S) MR. THOMAS L. HUNT - 00 HOURS:00 MINUTE(S)

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes counsel for all parties of record:

COUNSEL FOR PLAINTIFF: MR. ANTHONY G. BUZBEE
MR. PETER K. TAAFFE MR. JASON WILLIS
The Buzbee Law Firm - AND -
MR. BENJAMIN GUBERNICK Gubernick Law

COUNSEL FOR DEFENDANTS: MR. THOMAS L. HUNT
Thomas L. Hunt & Associates

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.



Certified to by me this 14th day of May, 2021.

__________________________________ Gina D. Ellis, Texas CSR 2822
Expiration Date: 04/30/22 Firm Registration No. 169
Ross Reporting Services 11706 Playa Court
Houston, Texas 77034 Job No. 141542



FURTHER CERTIFICATION UNDER RULE 203 TRCP

The original deposition was/was not returned to the deposition officer on _________________________;

If returned, the attached Changes and Signature page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to MR. ANTHONY G. BUZBEE, Custodial Attorney;

That $__________ is the deposition officer's charges to MR. ANTHONY G. BUZBEE for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3, and that a copy of this certificate was served on all parties shown herein on and filed with the Clerk.

Certified to by me this __________ day of ____________________, 2021.

__________________________________ Gina D. Ellis, Texas CSR 2822
Expiration Date: 04/30/22 Firm Registration No. 169
Ross Reporting Services 11706 Playa Court
Houston, Texas 77034 Job No. 141542

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 87805791
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Ali Choudhri's Original Petition in Intervention
Status as of 5/16/2024 10:32 AM CST

Associated Case Party: AzharM.Chaudhary

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Sanjay R. Chadha | 795287 | srchadha@reachalaw.com | 5/16/2024 9:50:24 AM | SENT |
| Azhar Chaudhary | | attorney@chaudharyjd.com | 5/16/2024 9:50:24 AM | SENT |
| Disha Lalwani | | disha.lalwani@reachalaw.com | 5/16/2024 9:50:24 AM | SENT |
| Sanjay Chadha | | attorney@reachalaw.com | 5/16/2024 9:50:24 AM | ERROR |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joe SStewart | | jss@jstevenstewart.com | 5/16/2024 9:50:24 AM | SENT |
| Siri Gurmukh Khalsa | 24070052 | sirikhalsalaw@gmail.com | 5/16/2024 9:50:24 AM | SENT |
| Kimberlyann Robards | 24086249 | kimrobards@outlook.com | 5/16/2024 9:50:24 AM | SENT |
| Thomas L.Hunt | | tom@thomaslhuntassociates.com | 5/16/2024 9:50:24 AM | SENT |
| Service Account | | service@reachalaw.com | 5/16/2024 9:50:24 AM | SENT |
| Siri Khalsa | | siri@sirikhalsalaw.com | 5/16/2024 9:50:24 AM | SENT |

Associated Case Party: Ali Choudhri

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ali Choudhri | | ali@jetallcapital.com | 5/16/2024 9:50:24 AM | SENT |