# EXHIBIT 15

Case 24-03225 Document 3 Filed in TXSB on 12/10/24 Page 1 of 75

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS (HOUSTON)

MOKARAM-LATIF WEST LOOP LTD., Plaintiff,

v.

ALI CHOUDHRI, Defendant.

Adv. No. 24-03224

MOKARAM-LATIF WEST LOOP LTD., et al., Plaintiffs,

v.

ALI CHOUDHRI, et al., Defendants.

Adv. No. 24-03225

515 Rusk Street
Houston, TX 77002

Monday, December 2, 2024
9:01 a.m.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES CONTINUED.

Audio Operator: Courtroom ECRO Personnel

Transcription Company: Access Transcripts, LLC
10110 Youngwood Lane
Fishers, IN 46048
(855) 873-2223
www.accesstranscripts.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES (Continued):

For Osama Abdullatif: Hoover Slovacek LLP
By: THOMAS MICHAEL BALLASES, ESQ.
BRICE BEALL, ESQ.
5051 Westheimer, Suite 1200
Houston, TX 77056
(713) 977-8686

For Ali Mokaram: Gray Reed
By: D. SCOTT FUNK, ESQ.
1300 Post Oak Boulevard, Suite 2000
Houston, TX 77056
(713) 986-7000

Gray Reed
By: LYDIA R. WEBB, ESQ.
1601 Elm Street, Suite 4600
Dallas, TX 75201
(214) 954-4135

For Ali Choudhri: ALI CHOUDHRI (Pro se)
2425 West Loop South, Suite 1200
Houston, TX 77056

(Proceedings commence at 9:01 a.m.)

THE COURT: Good morning. Please be seated.

MR. FUNK: Good morning, Judge.

THE COURT: All right. Good morning. We are here in adversary proceeding 24-3224, which is the Mokaram-Latif West Loop Ltd. V. Choudhri case. And we're here in 24-3225, which has a similar style.

If you wish to appear in either of those cases, please come forward to the podium. If you wish to appear on the phone and video, please press "five star" on your phone.

MR. FUNK: Your Honor, Scott Funk on behalf of Ali Mokaram, and my partner, Lydia Webb, is in Dallas remotely.

THE COURT: Thank you, Mr. Funk.

MR. BALLASES: Michael Ballases on behalf of Osama Abdullatif and Brice Beale from my office as well.

THE COURT: Thank you.

MR. CHOUDHRI: Good morning, Your Honor. Ali Choudhri.

THE COURT: Good morning.

Ms. Webb, good morning.

MS. WEBB: Good morning, Your Honor. Lydia Webb.

THE COURT: And you're here on behalf of?

MS. WEBB: Oh, sorry. I'm with my partner, Scott Funk. We're here on behalf of Ali Mokaram.

THE COURT: Thank you. From 832-715-2744, who do we

have on the phone?

MS. LOPEZ: Patricia Lopez.

THE COURT: Ms. Lopez, who are you representing today?

MS. LOPEZ: I thought I was supposed to have court today at this time, but I'm -- I think I'm -- wrong time maybe.

THE COURT: What case are you here on, Ms. Lopez?

MS. LOPEZ: This was going to be for my bankruptcy for the Chapter 13.

THE COURT: Do you have your case number handy?

MS. LOPEZ: Let me see -- no, I don't know, hang on just a minute. I'm so sorry. It says here that --yeah, eleven o'clock -- oh, not, it's at eleven o'clock. I'm sorry. I have the wrong time.

THE COURT: Okay. Thank you.

MS. LOPEZ: I'm so sorry.

THE COURT: Thank you.

MS. LOPEZ: Thank you.

THE COURT: All right. Does either party wish to introduce or do any parties wish to introduce any evidence at today's hearing before we have argument? All right.

MR. CHOUDHRI: Yes, Your Honor.

THE COURT: Mr. Choudhri? Go ahead, please.

Ms. Webb, go ahead. Mr. Choudhri, you spoke up first. Go ahead. What evidence do you wish to introduce?

MR. CHOUDHRI: May I -- should I speak from --
THE COURT: Please.
MR. CHOUDHRI: -- near the podium?
Your Honor, I introduced the representations on specifically Page 29 of the November 13th hearing in --
THE COURT: Sorry. Is this an exhibit that you're offering?
MR. CHOUDHRI: Yes, Your Honor.
THE COURT: Okay. And which exhibit is it from the docket sheet?
MR. CHOUDHRI: Your Honor, the documents that I filed, they're -- I was advised they were not going to be showing up as ECFs, so I couldn't locate the ECF online. But it was filed online. The clerk indicated it could take some time to upload it, but it was filed on the 27th of November, the day of the briefing that Your Honor required the briefing to be submitted by.
THE COURT: How did you file them?
MR. CHOUDHRI: In person.
THE COURT: Okay. Do you have copies of them here?
MR. CHOUDHRI: I have electronic copies, Your Honor. My assistant is on her way here. I have electronic copies. I also have --
THE COURT: So how can I look at the electronic copies? I want to see whatever exhibits you want to offer, but

I don't know what they are.

MR. CHOUDHRI: Sure. Would the -- I can go over a few of them. It'd be the adversary complaint we discussed at the pre-continuation of this hearing, at the last hearing on November the 13th, the Texas REIT -- George Lee vs. Texas REIT, the adversary.

THE COURT: Yeah. What are -- I just need to find the exhibits that you're offering. If you are offering an exhibit, tell me where to find it.

MR. CHOUDHRI: I was expecting it would be online. I didn't see them online, but I did file them with the reply brief. I attached the exhibits to that reply brief, but I don't see it. But the clerk did indicate that it could take some time to upload it, because I cannot electronically file. I have to physically log in and file. And this serves an e-file.

THE COURT: I got that, but then I would have thought we would have copies here somehow. You said you have an assistant coming?

MR. CHOUDHRI: Yes, Your Honor.

THE COURT: Why don't we wait for her to bring -- and she's bringing the hard copies?

MR. CHOUDHRI: She's, I think, bringing what -- her computer. She has some hard copies. I'm not sure if she has all of them.

THE COURT: I'll let you introduce them, but let's wait until she comes. We'll go ahead and let Ms. Webb go first, unless you have an objection to that.

MR. CHOUDHRI: I'm sorry, Your Honor?

THE COURT: Do you mind if we have taken Ms. Webb's evidence? She's asked to offer evidence as well.

MR. CHOUDHRI: Yes, Your Honor, please. Yeah.

THE COURT: Then we'll come back to you.

MR. CHOUDHRI: No objection.

THE COURT: And hopefully your assistant will be here by then.

MR. CHOUDHRI: Thank you. No objection.

THE COURT: Thank you. Ms. Webb, go ahead, please.

MS. WEBB: Your Honor, we did attach several exhibits to our brief filed at Docket Number 19 in Adversary Number 3224, and Docket Number 12 in Adversary 3225. It's Exhibits A through G. We'd like to offer those exhibits at this time.

THE COURT: Is there any objection to the admission of Exhibits A through G on ECFs 19 in the lower numbered case and 12 in the higher numbered case?

MR. CHOUDHRI: Yes, Your Honor.

THE COURT: All right. Do you object to all of them or to particular ones?

MR. CHOUDHRI: I would object to what I reviewed

there wasn't on (indiscernible) attached to proof of claim that Osama Abdullatif filed --

THE COURT: So let's take them one at a time. Do you object to A?

MR. CHOUDHRI: Let me just pull it up, Your Honor.

THE COURT: A is the final judgment upon AAA arbitration award.

MR. CHOUDHRI: I would object to that, Your Honor, because that's on appeal.

THE COURT: All right. There's an objection to A. B is the final judgment in 2012-27197A.

MR. CHOUDHRI: I don't have an objection.

THE COURT: Okay. Exhibit B is admitted.

MR. CHOUDHRI: That is also on appeal. So with that caveat.

THE COURT: I don't know what that means. We're either admitting it or not admitting it. Do you object to its admission?

MR. CHOUDHRI: I would object to the exhibits as they're submitted, you know, through a witness if --

THE COURT: So you're objecting to all the exhibits?

MR. CHOUDHRI: Yes, Your Honor.

THE COURT: All right.

Ms. Webb, how did you want to proceed?

MS. WEBB: Your Honor, frankly, I thought that we

would handle this via argument. We weren't really sure what to expect with respect to the other side. And so we're happy to proceed. We believe that it is Mr. Choudhri's burden to establish that the automatic stay applies here. So to the extent that there is, you know, evidence required to apply the stay to a non-debtor, and Mr. Choudhri bears that burden.

With respect to remand, we frankly don't think that we have to -- we don't require evidence. It's just the judgment on the pleadings.

THE COURT: All right. Mr. Choudhri, back to you for any evidence that you wish to introduce today.

MR. CHOUDHRI: Your Honor, if I may just respond a little bit to Ms. Webb?

THE COURT: Do you have any evidence that you wish to introduce today?

MR. CHOUDHRI: Yes, Your Honor. I'd like to introduce the Court's transcript dated November the 13th in front of Your Honor.

THE COURT: Any objection to the transcript on November 13th being admitted into formal evidence? That would be ECF 17.

MS. WEBB: No, Your Honor.

THE COURT: ECF-17 is admitted.

(ECF Number 17 admitted into evidence)

MR. CHOUDHRI: I would like to admit a conflict

waiver between myself and Michael Ballases with Hoover Slovacek.

THE COURT: Any objection?

MR. FUNK: Sure. Object to relevance and hearsay.

THE COURT: Why don't you introduce it during the course of the hearing? Any other evidence?

MR. CHOUDHRI: I'd like to submit to Your Honor an adversary complaint, Case Number 24-10120. The Adversary Case Number is 24-01039.

THE COURT: What do you wish to introduce on it, 24-01039?

MR. CHOUDHRI: It's the adversary complaint, Your Honor, in the Western Bankruptcy District between George Lee v. Texas REIT, the debtor, Ali Choudhri.

THE COURT: Any objection to the admission of the complaint in 24-1039?

MS. WEBB: No. No objection, Your Honor.

THE COURT: It's admitted.

(Adversary 24-01039 ECF Number 1 admitted into evidence)

MR. CHOUDHRI: I'd like to admit the deposition of Omar Khawaja, taken on September 11th, 2024.

THE COURT: The entirety of the deposition?

MR. CHOUDHRI: Yes, yes, Your Honor. I've subpoenaed Mr. Khawaja to be here. He did receive the subpoena. The process server is also outside, can confirm the service. But

for any reason if he's not here and if I'm limited, I would like to, at the minimum, introduce the deposition testimony. And I'd prefer him to be here live as a witness, along with Osama Abdullatif, who I'd intended to call. And I mentioned to Your Honor, when you had asked about the evidence and the net worth in the hearing last time, I said I would call Osama Abdullatif to the stand.

THE COURT: Okay. Is there any objection to the 9/11 deposition?

MR. FUNK: I would object to the relevance. I don't know what deposition --

MS. WEBB: I would think --

MR. FUNK: -- he's referring to. We haven't seen it. I also object to really any evidence being admitted. He hasn't supplied a witness list or an exhibit list here today. So this is all brand new to us.

MR. CHOUDHRI: Your Honor, it's the deposition Mr. Ballases has defended, Omar Khawaja, in the Western Bankruptcy, the Proof of Claim, they attempted to withdraw the Proof of Claim after it was objected to. And there was a deposition where Mr. Khawaja walked out, had to go to the hospital halfway through. And that deposition is very relevant to today.

And his assertions of alter ego and claims of what I own or what other entities and every debtor in that deposition,

I can represent, Your Honor. He states that Texas REIT is one and the same with me, 1001 WL, which is also in bankruptcy. He has sued lenders. There are -- several of these bankruptcies are the core reason of these slandering of title fraudulently --

THE COURT: Tell me the basis of its admission.

MR. CHOUDHRI: The basis of the admission, Your Honor, it's going to show the alter ego assertions.

THE COURT: I understand the relevance. Tell me how you can admit the deposition.

MR. CHOUDHRI: Your Honor, if Mr. Khawaja, I believe we have a process server just outside. He served Mr. Khawaja. And if he's here, then I don't need to admit the deposition, Your Honor. But in the event he fails to show up to the hearing, then I would --

THE COURT: Tell me the basis under the rules for the admission of the deposition if you're offering it now.

MR. CHOUDHRI: It's -- the basis is there are assertions into enforce --

THE COURT: Tell -- no, tell me the rule that allows you to admit a deposition.

MR. CHOUDHRI: It's one the exhibits in our brief, Your Honor.

THE COURT: Tell me the rule, the Federal Rule of Evidence that allows you to admit the deposition.

MR. CHOUDHRI: It's a party opponent, Your Honor. He's in a new concert, and it show -- and it basically --

THE COURT: Is he a party opponent in one of these adversary proceedings? Or in a different adversary proceedings?

MR. CHOUDHRI: No, Your Honor. They're in a concert, a new adventure.

THE COURT: Is he a party opponent in one of these adversary proceedings?

MR. CHOUDHRI: He's claimed under oath that he has an interest in this adversary --

THE COURT: Are you going to answer my question? Is he a party opponent --

MR. CHOUDHRI: No --

THE COURT: -- in one of these adversaries?

MR. CHOUDHRI: No, Your Honor. No, Your Honor.

MR. CHOUDHRI: Then it's not admissible under the party opponent rule if he's not a party opponent. I'm not admitting the deposition.

MR. CHOUDHRI: Your Honor, would -- may I ask, Your Honor, if -- what would be the best way to handle the subpoena? He's been served the subpoena to be here at 9 a.m.

THE COURT: Well, I'm not going to -- I'm not going to tell you what to do about that. If you have some relief you want from the Court, you seek the relief. What's your next

exhibit?

MR. CHOUDHRI: Your Honor, the next exhibit is going to be the plaintiff's original petition, which is Case Number 2011-25222, styled Osama Abdullatif v. First Community Credit Union, Ali Choudhri, Naeem Choudhri, Shahnaz Choudhri. This is a petition by Osama Abdullatif against me.

THE COURT: Any objection to the admission of the petition in 20-11222?

MR. FUNK: Yes, Your Honor, relevance.

THE COURT: What's the relevance?

MR. CHOUDHRI: Your Honor, the relevance is the claims. I'm going to do my best, Your Honor. The relevance is the claims by Osama Abdullatif that were dismissed with prejudice where he made statements that when my father was alive he had signed a settlement agreement, and later he had stated in his petition that he was under prescription medication and the settlement agreement is not valid since after my father passed away he modified his complaint and said my dad basically drugged him despite he had cashed a $750,000 check two days later.

THE COURT: What is the relevance of that to this proceeding?

MR. CHOUDHRI: The relevance goes to his credibility and the motivations of the constant litigation and suing my mom again and again and my dad and my lenders.

THE COURT: If he's a witness here today and you want to introduce this to attack his credibility, we'll take it up at that point. If he's not a witness, you can't attack the credibility of a person who's not here. Just --

MR. CHOUDHRI: Sure. And --

THE COURT: But we'll wait and see if he's a witness. What do you have next?

MR. CHOUDHRI: I intend to call him, Your Honor, as a witness. But I don't think he's present in the courtroom. He was here before and my understanding was he was going to be here today.

The next one, Your Honor, is a Proof of Claim that is in the Western Bankruptcy District, 24-10120, Claim Number 9, and there are, I believe, a few exhibits attached to it with a Proof of Claim. And that would be Proof of Claim Number 9-1, and Proof of Claim Number 9-2, and -3, the exhibits that are attached to it in the Western Bankruptcy.

THE COURT: Any objection to Proof of Claim Number 9-1, 2, 3, in 24-10120?

MR. FUNK: I'm not sure which one that is, Your Honor. Did you have a copy? Who's it filed by?

MR. CHOUDHRI: It's filed by Osama Abdullatif and Hoover Slovacek.

MR. FUNK: Is that our Proof of Claim?

MR. CHOUDHRI: The Hoover Slovacek -- the Proof of

Claim by Osama Abdullatif in the Texas REIT bankruptcy filed on June the 4th, 2024.

MR. FUNK: I would object to relevance, but otherwise, no objection.

THE COURT: I'm admitting it.

MR. CHOUDHRI: Also, Your Honor, there's a document here. It is a clerk's certificate of deposit in lieu of supersedeas bond. And that is dated February 23rd, 2023. And it is --

THE COURT: What's the relevance of that to today?

MR. CHOUDHRI: The relevance of this, Your Honor, is there was a cash deposit made on a judgment, the Osama Abdullatif, John Quinlan, Omar Khawaja, Joint Enterprises is attempting to collect, despite the fact that the judgment has been superseded with over $2 million in cash in the registry of the Court. And this is the very judgment that they recited in reference in their Proof of Claim in the Western District Bankruptcy Court, which is the Texas --

THE COURT: What does that have to do with whether we should remand the case or transfer it --

MR. CHOUDHRI: Your Honor, it has --

THE COURT: -- or do anything with it?

MR. CHOUDHRI: Your Honor, it has to do with the fact that they have been taking actions to collect a judgment that is already superseded. And they've actually filed --

THE COURT: That's a defense. If I remand this case, that's just a defense in state court.

MR. CHOUDHRI: Well, the challenge, Your Honor, is is when they signed the Proof of Claim and they attached this very judgment that superseded, they attach that in collections against Texas REIT. And in that very Proof of Claim, they assert alter ego claims against me and my mom and other entities, claiming the debtor --

THE COURT: No, look, I understand that you have arguments. I'm trying to figure out how those arguments play into what we ought to be doing, as opposed to what another court ought to be doing.

MR. CHOUDHRI: It basically shows, Your Honor, that all of these should be in one place, because when they're piecemealing it and they're --

THE COURT: One place isn't going to be here, right? Where's the one place they all ought to be?

MR. CHOUDHRI: In the Western District. If Your Honor wants to keep this case and have the matters decided before Your Honor, that's not something that I --

THE COURT: No, I --

MR. CHOUDHRI: -- may be opposed to.

THE COURT: I'm not going to keep the case. I'm either sending it to the Western District or I'm remanding it. They're telling me that on November 8th that the Western

District returned the case to state court in light of these same arguments. Do you disagree with that?

MR. CHOUDHRI: No, Your Honor. I totally disagree with that. That's not accurate.

THE COURT: So --

MR. CHOUDHRI: The case was removed to Judge Rodriguez, and I believe Judge Rodriguez then transferred it to the Western District.

THE COURT: Right.

MR. CHOUDHRI: This was after the Proof of Claim was filed. They then attempted to withdraw the Proof of Claim. The Proof of Claim was objected to. They were not able to withdraw the Proof of Claim. There's a hearing set on December the 19th or 18th, I believe, in front of Judge Robinson.

Unfortunately to that, they did file a motion to remand. There was not any response. There wasn't a lawyer.

THE COURT: If they said you filed a motion for reconsideration, and then on the 8th he -- let me just find what they're telling me.

MR. CHOUDHRI: There was a motion for remand. There was not a response on file for the motion to remand. And that was based on the Proof of Claim that was filed by Osama Abdullatif in the Western District.

THE COURT: Hold on just a minute.

MR. CHOUDHRI: And the judge did -- I did find a

lawyer and filed a motion to reconsider after the deadline, and that was denied.

THE COURT: So it got remanded. You filed a motion for reconsideration. That was denied on November the 8th. So it's remanded, right?

MR. CHOUDHRI: Yeah. That's how we -- that's how the case went back to Judge Wilson, and then --

THE COURT: Right.

MR. CHOUDHRI: -- there was a motion -- there was a notice of removal, which is what we're here today about. And that is based on, A, the adversary by George Lee and other assertions and claims by him on alter ego. And Judge, one thing I wanted to mention to Your Honor is one of your questions, Your Honor, I think last time was, has the state been lifted on Page 29 to Mr. Ballases to allow you to proceed in state court?

THE COURT: Right.

MR. CHOUDHRI: And, Judge, Ballases said on Page 29, Line 6, yes. Judge Robinson lifted the state for us to proceed against Texas REIT an adversary proceeding in front of Judge Norman. And, Your Honor, I have verified that is a false representation. False premises lead to false conclusions.

THE COURT: So let me tell you -- let me tell you what I'm thinking of doing today, because maybe everybody's going to be in agreement with this step. I'm thinking I should

remand the case, but not determine that the case can proceed in state court, that that ought to be determined by Judge Robinson. If he thinks the stay applies, the stay will apply. And if he doesn't think it will apply, then the stay won't apply. But we remand the state court, but I don't make a decision on whether the stay applies or not.

MR. CHOUDHRI: So, Your Honor, Judge Robinson, already -- I've reviewed an order that they've attached to their response brief, and I believe Page 5 of 5, Judge Robinson says in that order that the stay has not been lifted.

THE COURT: Well, that doesn't mean the stay applies, right? So if they want to proceed in state court, you're correct that if the stay applies, they get sanctioned. If they want to go to Judge Robinson and get the stay lifted, he lifts it or not lifts it. But why wouldn't I remand and make no comment about whether the stay applies or not? Because it's one thing to say the stay hasn't been lifted. It's another thing to say the stay applies and just leave all that up to Judge Robinson or to the parties to fight about it and seek sanctions with one another.

MR. CHOUDHRI: So, Your Honor --

THE COURT: But why wouldn't we remand without addressing the stay question, leave that up to Judge Robinson?

MR. CHOUDHRI: So, Your Honor, I think the appropriate thing would be to let Judge Robinson decide who has

the George Lee case. He was actually hearing on December 18th or 19th the withdrawal of their Proof of Claim that they're attempting.

The reason Texas REIT is in bankruptcy is because of their actions against the property and the interference. In all of these -- many of these bankruptcies, Your Honor, including the Galleria West Loop Investments, there was a fraudulent lien filed against Galleria West Loop, filed on record for 50 Briar Hollow, claiming that 50 Briar Hollow was an alter ego of me. That property eventually was foreclosed in your court's -- in Your Honor's court.

What I wanted to mention, Your Honor, is I think --

THE COURT: So tell me what's wrong --

MR. CHOUDHRI: -- since --

THE COURT: Tell me what's wrong -- I know we're moving from evidence to argument. Tell me what's wrong if I remand the case and I do not authorize it to proceed or disauthorize it to proceed. It simply gets remanded. And if you believe that you can persuade Judge Robinson that the stay applies, either they get sanctioned or they don't proceed until that hearing is done.

MR. CHOUDHRI: Sure. And, Your Honor, something else I want to bring your attention --

THE COURT: But what's wrong with that?

MR. CHOUDHRI: There's one thing I want to bring up

about sanctions for --

THE COURT: Tell me what's wrong with what I said.

MR. CHOUDHRI: I believe it delays things. I believe it should all be from one judge. And I don't mind who that judge is, Your Honor, but what they're doing is whack-a-moling. Every day I wake up and I'm in different courts because they file gazillions, and, you know, I'm exaggerating, not a gazillion, but dozens of lis pendenses My mom has been sued. All these entities have been sued. It should be in one place.

And right now, George Lee is working in concert with them. And by the way, Mr. Ballases is misrepresented. He represents George Lee. Last time he says, we have nothing to do with that adversary. They're actually in concert. They had him file that adversary on the alter ego against Texas REIT. That's in the Western District. And Osama Abdullatif and George Lee have filed lis pendenses, and Osama shows up to the auction to buy the property in February 2024, the Briar Hollow property.

So the challenge, Your Honor, is they have sued two other entities, claiming those entities -- those properties were lost. It should be in one court. And right now, they've availed themselves to the jurisdiction of Judge Robinson. They filed this Proof of Claim, Your Honor. And in this Proof of Claim, they assert alter ego against me, my mom, my lenders. My lenders are not interested in doing business because they're

getting sued. They're getting subpoenaed. And it's all --

THE COURT: But how --

MR. CHOUDHRI: -- in an attempt --

THE COURT: I don't understand how my remand of these two cases to state court would affect in any way Judge Robinson's ability to rule on the Proof of Claim and its effect.

MR. CHOUDHRI: Your --

THE COURT: How would it preclude him from dealing with that?

MR. CHOUDHRI: Your Honor, it does, because they continue to make filings. After we left here, Your Honor, Mr. Funk filed a -- filed sanctions and monetary things against me in the state court, and not in your court, Your Honor. And so there are so many different --

THE COURT: Yet, I don't understand. Let's focus on one issue at a time.

MR. CHOUDHRI: Yes, sir.

THE COURT: You're telling me you want Judge Robinson to be able to deal with the Proof of Claim, Judge Robinson to be able to deal with whether the alter ego claims amount to a situation where the stay would apply. How does my remand, without commenting on that, in any way preclude Judge Robinson from making all of the decisions that you want him to make?

MR. CHOUDHRI: Sir, Your Honor, are you suggesting

that everything is stayed until Judge Robinson decides to stay?

THE COURT: No, because I don't know if it's stayed or not. Let Judge Robinson decide that. If it turns out they proceed in violation of the stay, then Judge Robinson would have the authority to impose severe sanctions on them. If they proceed not in violation of the stay, if they're in the stay, then maybe there's no penalty. But why wouldn't Judge Robinson -- I want Judge Robinson to be able to decide the stay issues.

MR. CHOUDHRI: And that's what --

THE COURT: A remand can occur, and he can still decide all of that.

MR. CHOUDHRI: Well, Your Honor, they put me in this conundrum. I didn't. The challenge is --

THE COURT: No, you removed him. You removed him.

MR. CHOUDHRI: But, Your Honor, the problem is is George Lee filed after this was removed the first time. George Lee filed an adversary in concert with that against Texas REIT, that's a debtor, in the Western Bankruptcy District. There are -- Texas REIT is attempting to sell property. They're objecting. They're playing in different courts. It should be in one court, Your Honor.

And I just wanted to mention, Your Honor, that this is, in the Fifth Circuit, a case right on point for this on the S.I. Acquisition v. Eastway Delivery, where the stay applies to

their allegation where they're on the alter ego. And Your Honor was right when Your Honor, you know, at the last hearing, stated what you stated. Obviously, you didn't make it absolute. You said you believe, you presume that they violated the automatic stay and the stay applies.

But I believe the fair thing, Your Honor, would be that there should be a decision in one court so there isn't this maneuvering. There's constant interference with my assets and other -- and even the debtor assets. And they've blurred the line. They're actively contacting people who I'm doing business with to shut me out so I have no funds to defend myself.

The extent of maliciousness, Your Honor, they have represented things falsely to various courts. And there's ricocheting. And so if it's in one court, one judge is deciding these issues and how they're intertwined. Because they are intertwined because they made it intertwined. They've brought George Lee and had him file the adversary. We had put up multi-million dollars to supersede a judgment.

When in 2015, there have been at least 30 or 40 lis pendenses, and not just lis pendenses, but fraudulent liens where they filed an affidavit saying this property is an alter ego without that entity that owns the property being a party to the lawsuit.

THE COURT: So let me ask you this. If I were to

issue an order of remand today, it wouldn't be effective until December 16th. There's a 14-day stay. Did you say your hearing was on the 19th?

MR. CHOUDHRI: I can find out exactly, Your Honor. What time is it? There's a hearing on --

THE COURT: Because I am -- what I'm not trying to do is to cut the Western District out of making the decision that you want. So I'm trying to figure out how to do that. When's your hearing?

MS. WEBB: December 19th at 1:30, Your Honor.

THE COURT: December 19th? So what --

MR. CHOUDHRI: And Your Honor --

THE COURT: What if I stayed my order until January 1? Get the relief you want. My order won't be effective and he can change it. My remand order.

MR. CHOUDHRI: Your Honor, my request, my insistence would be there's a lot of gamesmanship. If I had the opportunity to really express myself and share what I've gone through, the misery and the active concerted efforts to interfere and diminish funds that creditors -- other creditors would get --

THE COURT: But that isn't going to happen here. I'm saying if you have your hearing on the 19th, go for it. I won't make my order effective until after he can rule on that, so I'll delay it until January 1. If he wants to delay it

further, he can delay it further.

MR. CHOUDHRI: Your Honor, I would request that the case be transferred so that -- so Judge Robinson can make these decisions with, you know, not discounting your -- I think you're the smartest judge, but not discounting, you know, whatever you believe. But I would think if it's in one court, in one judge, because what they're doing, I'm actively, as the representative of the debtor, attempting to sell property that Texas REIT owns. And they're constantly interfering. They're making statements to third parties that the stay has been lifted.

THE COURT: I know what you're -- I know what you're -- I know -- you keep repeating what you're requesting.

MR. CHOUDHRI: Sorry.

THE COURT: Why don't you respond to whether what I am suggesting solves your problem, which is if Judge Robinson believes the stay applies at the hearing on the 19th, then this remand doesn't mean a thing because it's going to be stayed. So it's irrelevant that it gets remanded on January the 1st. If he decides there is no stay, then remand was the right decision. Why doesn't that solve all of your problems?

MR. CHOUDHRI: Your Honor, I think because of all the challenges with -- there are four debtors in front of Judge Robinson in bankruptcy, all sourced because of their actions, the causation of that. And they continue to do so,

Your Honor. And I think if Judge Robinson can -- if we can actually -- if I can have a hearing in front of Judge Robinson and he can decide to remand or the stay applies, I think that would be the most appropriate thing, because since --

THE COURT: No, he decides if the stay applies. But there's -- this is -- there's only two choices. Stay applies, stay doesn't apply, right?

MR. CHOUDHRI: Right. Yes, sir.

THE COURT: Stay applies, then my order that becomes effective on January 1 remands a case to state court, and the state court is powerless to do anything because he has decided that the stay applies. Alternative 2, he says the stay does not apply. Then on January 1, the state court is free to move because you lost on the 19th. Why doesn't that solve all of your problem?

MR. CHOUDHRI: So, Your Honor, the hearing on the 19th is not my hearing. It is a hearing by Osama Abdullatif, John Quinlan, Omar Khawaja on wanting to withdraw their Proof of Claim, and Judge Robinson said it's very suspicious after it's been objected and you're not sitting for your depo. I think it's very suspicious. I'm going to allow you to withdraw it because it's been objected to.

They are attempting to, now, there may be more adversaries or another adversary the debtor may be filing against them for actions that they've taken place on, but there

isn't a hearing, Your Honor, in front of Judge Robinson right now as it relates to the stay.

THE COURT: Well, why don't you file one that says --

MR. CHOUDHRI: I absolutely --

THE COURT: -- they're violating the stay if that's your position and let him rule on it? I'm not trying to sidestep him. January 1 is 29 days from today.

MR. CHOUDHRI: Right, Your Honor, but I don't control what -- when we'll have a hearing in front of him as it relates to this issue. Judge Robinson takes on what is in front of him. And if somebody asks, he'll set the hearing. And it's a process, and I just don't want to be in a situation, if Your Honor, says January 1, and then I'm not -- I'm unable to get a hearing about the stay.

THE COURT: You removed this on November 4th. You had plenty of time to argue that it violated the stay.

MR. CHOUDHRI: Your Honor, what I can --

THE COURT: Why are you not following?

MR. CHOUDHRI: What I can tell Your Honor is that they are violating the stay. They're actively violating the stay, and they're interfering. And I believe if we're in one court, it would be more efficient, and it would be less multiplication and less inconsistencies. And so if these issues with the motion to transfer is granted and Judge Robinson's is deciding and that can be set, all those issues in

front of Judge Robinson, who already has the adversary, and has actually, the debtor has filed a motion to dismiss the adversary. There's a hearing. He's considering that. There are other cases that they've instigated that are collaterally attacking the debtor, and me and my family.

And so what they want is they want to have a multi-attack in various places with inconsistencies, and then they go back to one court and say, well, you said, well, this happened in this court, and it really prejudices not just me, but they're stepping in line of other creditors that really are legitimate creditors that are affecting the estate. They're sidestepping those other creditors, Your Honor.

And so I think if the entire picture is determined with one judge, whether it's Your Honor or whether it's Judge Robinson --

THE COURT: So let me tell you where the problem is on the automatic stay question. And maybe you can help me reason through this. You're alleging that these entities are not alter egos, right?

MR. CHOUDHRI: Correct, Your Honor.

THE COURT: So under your theory, there is no basis for removing them.

MR. CHOUDHRI: Your Honor, the challenge is this, is that most people will never ever do what they do, what they did. But they do it because they have other motivations and

other reasons for doing so. And so when they bring causes of action and take certain actions and represent to third parties -- and here's the problem, here's the challenge that I'm facing, Your Honor, I'll be honest, is you've asked me questions last time. I was very honest with you. I've always been honest in my representations to you, Your Honor. But when someone misrepresents something to you, it ricochets in other courts.

So in the other case in front of Judge Norman, on May 31, I was in front of Your Honor, and on June the 2nd, I had a stroke. And on June the 4th, there was a foreclosure scheduled for 50 Briar Hollow, an entity that's in bankruptcy in your Court, Galleria West Loop Investments. That same entity, that same property, had a fraudulent lien.

The goal was to sell that property for the 363 sale. Unfortunately, it didn't happen. Judge Norman had a hearing, a plan confirmation, around June the 16th. On June the 7th, I collapsed. I went back to the doctor. They said, you've got to stop working. You're going to kill yourself. And I got a letter saying that I can't work for 30 days. But the hearings weren't stopping. Courts weren't hearing what I said.

And when my lawyers went in front of the judge, and the root of that was this fraudulent lien that Osama filed. That's the stress that I couldn't believe that how this has been happening for the last 12 years for me. First, it was the

ex-wife. Now, it's alter ego theory against everybody I'm doing business with. My lenders have been sued.

Judge Norman denied the motion to continue. And he said, I didn't do it callously because, he said, because you appeared in front of Judge Isgur, which I called in on June the 4th. And I had my stroke on June 2nd, trying to convince you to stop the foreclosure, which you have -- your decisions, I'm not, you know, faulting anybody for anything.

The frustration, Your Honor, is when something is said in one court by --

THE COURT: Yeah. But you're not answering my question. You're telling me that these entities are not alter egos. If they're not alter egos, there isn't a basis for removal. Only if they are alter egos is there a basis for removal. So your relief you're requesting is inconsistent with the facts that you're alleging.

Conversely, if you are correct that they are -- or if you are incorrect, and they are alter egos, such that the stay applies, I'm going to give you an opportunity to seek that determination. But I don't understand how it's a legitimate removal of the facts that you're alleging.

MR. CHOUDHRI: So, Your Honor, it's -- when they make this assertion and they fraudulently tie up assets that are non-debtor assets with the claim that it's an alter ego, and they're saying that to the public, to lenders, to third

parties, and when -- you know, and even to courts, having it -- I don't agree with that, but that's their assertion, that's their position, and they're having other people exercise that assertion.

THE COURT: But that's -- but if you're correct, it's a stay violation, right? So that's what I'm trying to allow you to get done.

MR. CHOUDHRI: So the challenge --

THE COURT: But let me --

MR. CHOUDHRI: Sorry, Your Honor.

THE COURT: Why don't you go ahead and finish your evidence you're offering. I know that was a big diversion, but as I'm trying to figure out whether these offers of evidence are relevant to what we're doing, it becomes more difficult and I was trying to explain to you what's going through my mind of your relief and your facts are inconsistent with one another. There's nothing illegal about that. But in terms of what I ought to be doing, I ought to be setting this up so that those facts can get resolved in the correct court. And I think that is Judge Robinson, but in the meantime, I think this case probably stays in state court so that Judge Robinson is free to make the decision one way or the other.

Having said that, I interrupted you, and why don't you proceed with your evidence, and let's see what else you want to offer.

MR. CHOUDHRI: Yes, Your Honor. So just equitably, Your Honor, it should be --

THE COURT: Let's see what other evidence you want to offer.

MR. CHOUDHRI: I have creditor's objection to the claim of John Quinlan, Omar Khawaja, and Osama Abdullatif. And it is Case Number 24-10120, Document Number 345.

THE COURT: Any objection to that admission?

MR. FUNK: I don't know what document you're referring to. He didn't provide an exhibit list to us. We don't have these exhibits. I would argue relevance. In addition to he violated Bankruptcy Rule 913 regarding not giving us an exhibit list and a witness list for this hearing.

THE COURT: Yeah, the problem that we have is he says he did do it with the clerk on the 27th, and that this is a clerk's processing issue.

MR. FUNK: Okay. I still don't have it. He could easily email us or anything like that, and I haven't --

THE COURT: Yeah. Why don't you come take a look at it? He's got it right here.

MR. FUNK: Okay.

THE COURT: I really don't want to delay today's hearing. I think that's just going to cost everybody a lot more money, so.

MR. FUNK: Okay, let's go ahead. I would object to

relevance.

THE COURT: Okay. What's the relevance of the objection to claim?

MR. CHOUDHRI: Your Honor, this is a claim objection to their Proof of Claim that they filed in the Texas REIT bankruptcy case.

THE COURT: Okay. I'm going to admit it. What's your next piece of evidence? By the way, all of my admissions are going to then be reconciled with what you filed on the 27th, and hasn't yet made it on the docket. So what do you have next?

MR. CHOUDHRI: Correct, Your Honor. I have a third amended petition in the case that is styled Hira Azhar v. Ali Choudhri. And that's a case that the debtor was a defendant in, Texas REIT, Ali Choudhri is a defendant, my mom, Shahnaz Choudhri, is a defendant. That is the divorce action by Osama Abdullatif, who --

THE COURT: Right. I understand that's relevance before Judge Robinson, if you go there. I don't understand its relevance on whether we should remand or not. What's the relevance to the remand question?

MR. CHOUDHRI: Judge, it just shows the pattern and the attacks against not just the existing debtor in Texas REIT, but other debtors that are in bankruptcy right now. They weren't in bankruptcy at the time they were defendants in the

divorce case.

THE COURT: All right.

MR. CHOUDHRI: But --

THE COURT: Okay. Is there an objection to this document?

MR. FUNK: Relevance to this proceeding.

THE COURT: I'm going to admit it. I want to indicate why I'm admitting these things. They're not -- so far, the arguments that are being tied to these offers don't change what I think I should do so far, but they are relevant to his argument that I should be looking at a bigger picture, because I think they're relevant to his argument. Unless you're objecting to authenticity, I'm going to admit them so there's a clear record of the support for his argument. So it is admitted.

(Third amended petition admitted into evidence)

THE COURT: What do you have next?

MR. CHOUDHRI: I have a defendant's original answer, Cause Number 2017-10832. This is a Jetall Companies and Declaration Title v. Todd Oakum, Renee Davy Oakum.

THE COURT: What does that have to do with what we're hearing?

MR. CHOUDHRI: Your Honor, the -- so Michael Ballases is here. Hoover Slovacek represented myself and Jetall Companies, and asked me to sign a conflict waiver, which we

discussed earlier. And I did. And the conflict waiver was I was attempting -- Jetall was acquiring a company known as Declaration Title Company. And Hoover Slovacek represented Jetall and represented Renee Davy Oakum. And had me and Renee sign a conflict waiver, that if there was ever a dispute between Renee and I over that transaction, they would not represent Renee in the future. The conflict waiver was signed.

Within a matter of months, he continued to represent Renee Davy Oakum. And in fact, even was the attorney, which is the underlying judgment that they're attempting to collect on. That would go to that I would also move -- I've recently obtained an order of disqualification of Jackson Walker. They represented me and my companies for a period of nearly ten years.

And then they continued to -- then they went and represented the Bank of Kuwait, with co-counsel Pillsbury and Hoover Slovacek they've had. So I would move to that -- I'm about to get to my next issue, Your Honor, is the law firm Gray Reed and Hoover Slovacek should be disqualified from representing the plaintiffs here.

THE COURT: So we've been here since November 2nd. Is this the first time you're raising this?

MR. CHOUDHRI: Your Honor, I have come to learn of new facts that I can get into. And I have more evidence than I had before, Your Honor. And --

THE COURT: Is this the first time you're raising it?

MR. CHOUDHRI: I believe this is the first time I am raising it.

THE COURT: Okay.

MR. CHOUDHRI: I did not believe it was -- and something else I want to raise, just for -- not that I want to do anything. I just -- I will leave it to Your Honor's discretion of what you think is best with that information, but I wanted to disclose everything to Your Honor.

THE COURT: Okay. Well, I'm not admitting this document until I have a pleading before me that seeks to disqualify them and lays out the facts. So I'm not permanently not admitting it, but it's not relevant to what we're doing today. I don't have a motion to disqualify, and I'm not going to accept an oral motion to disqualify folks when we're at a hearing that's been long scheduled and when this was removed at the beginning of November. It's just too late to do it. It may not be too late for future hearings, but file something in writing if you want to disqualify.

MR. CHOUDHRI: Yes, Your Honor. And, Your Honor, I have a series of lis pendenses filed against me in various properties, including the debtor's property, Texas REIT.

THE COURT: Is there any objection to admission to the series of lis pendens? Again, to go to his theory that this is a cumulative action and that the Court should take all

of that into consideration, a theory that I don't think I should be doing, but I think it is relevant to that theory. Any objection?

MR. FUNK: Just the same objection as to relevance that you've ruled on, Your Honor.

THE COURT: Okay. All the lis pendens are admitted.

(Lis pendens admitted into evidence)

MR. CHOUDHRI: Your Honor, there's a sale agreement signed by Osama Abdullatif and Ali Mokaram, and that sale agreement basically states that Osama Abdullatif owns all the claims of Ali Mokaram, and he will pay 100 percent of the fees of Scott Funk and Gray Reed. And Ali Mokaram has no ability to settle or negotiate or resolve the claims without Osama's exclusive approval, which shows who's the beneficiary and who's the economic interest holder.

THE COURT: Okay. I don't really accept your representation as to what's in there necessarily, but I think that goes to the same theory. Any objection to the document?

MR. FUNK: The same objections, and your point about what it says is noted, Your Honor. That's not what it says.

THE COURT: All right. It is admitted. I'm sorry, go ahead.

MR. BALLASES: We would have the same objection to relevance that we've already articulated. Everything is authenticity. I don't look at any of these documents, so when

he says that it's this document, I don't --

THE COURT: Come look at them if you want, or else we'll -- I'll continue the hearing if you want. But I don't think --

MR. BALLASES: No, no, I don't want that. I just --

THE COURT: Yeah, but he filed them on the 27th, and they haven't been docketed yet.

MR. BALLASES: Okay.

THE COURT: I'm not going to impair him for that. You can look at it for authenticity.

MR. BALLASES: Yeah, I would like to.

THE COURT: Yeah.

MR. BALLASES: And I'd like to have copies.

MS. WEBB: Your Honor, while they're looking at it, I'd just like to ask a process question. It's -- assuming there's an issue with the clerk's office, right, and these exhibits do show up, I'm not sure if any exhibits that are going to show up on the docket are the same ones that we've talked about here today.

THE COURT: No, that's what I was saying, is this is going to -- we're going to have to reconcile what shows up with what was offered and --

MS. WEBB: Yeah.

THE COURT: Yep. So those -- they're only admitted if, for example, they were not filed on the 27th, then they're

not admitted at all. But if assuming --

MR. CHOUDHRI: I agree to that.

THE COURT: -- we matched them --

MS. WEBB: That was my question.

THE COURT: -- to what was filed on the 27th, any authenticity objection?

MS. WEBB: Understood.

MR. BALLASES: I mean, it's not my document, so allegedly it was drafted by another firm, so I can't -- I guess I'll withdraw it.

THE COURT: All right. It's admitted.

(Sale agreement admitted into evidence)

MR. CHOUDHRI: Your Honor, there is a -- it would be Exhibits -- it's a radiology report dated June the 2nd, 2024, and a cardiology note from Houston Cardiology Consultants dated June 7th, and discharge papers from Houston Methodist dated June 3rd, 2024.

THE COURT: And what's that relevance?

MR. CHOUDHRI: The relevance, Your Honor, is about my medical condition and suffering a stroke, and I won't lead into what they did with my physicians by contacting them or asking them, and just making sure nobody wants to -- a lawyer or service provider wants to assist or help and just to basically crumble my operation.

THE COURT: So if I were to admit those, you're going

to open a lot of discovery into all of your medical issues. I don't think they're very relevant, if relevant at all. Are you sure you want to offer those?

MR. CHOUDHRI: Yes, Your Honor.

THE COURT: All right. Anybody want to object to the admission of the medical records?

MR. FUNK: Same objections as to relevance, Your Honor, that you've already ruled on.

THE COURT: I'm going to admit them only if there is a link to harassment of the physicians. The medical reports themselves could then be admitted to show the effect of the harassment, to show the bigger picture he's arguing. However, if there is no evidence of harassment, I'm not going to admit the medical records. So they are -- that is conditioned on a showing of harassment.

MR. CHOUDHRI: Your Honor, I have an affidavit of the cardiologist, but I did not add that to the exhibit when I filed it. So --

THE COURT: Okay. Then I'm not admitting the medical records.

MR. CHOUDHRI: There is a -- it's the document I handed you, Your Honor, the last time. It was dated February 14th, 2024. It was an affidavit of lien signed by Osama Abdullatif, where he states he attaches the 50 Briar Hollow property, and he files the real property records. And that is

the --

THE COURT: But that was filed with your exhibits on the 27th?

MR. CHOUDHRI: Yes, sir, that was. The filing --

THE COURT: I'll admit that again for the same showing that you're offering.

(Affidavit of lien admitted into evidence)

MR. CHOUDHRI: Your Honor, there was a hearing in front of Judge Wooldridge in August 2019, Case Number 2015-36895, where that is the divorce case, Hira Azhar v. Ali Choudhri. Hira Azhar lived in the house of Osama Abdullatif. And at this hearing, the judge cross-examined Osama Abdullatif and asked him and stated this is not a divorce case. You're using this woman as a pawn, and this promissory note is not valid.

She had apparently signed a promissory note that was a blank promissory note where they had an agreement where he was going to fund all of her legal fees, and whatever she got, Osama was going to get -- Osama and Omar, collectively, were going to get 50 percent of whatever recovery that he was to obtain against me through this false --

THE COURT: Show me --

MR. CHOUDHRI: -- interception.

THE COURT: Show me which part of the transcript you want to admit. Let me see it. What pages?

MR. CHOUDHRI: And Your Honor, in addition to that, that I attached word --

THE COURT: Now let me see the transcript pages that you want to admit.

MR. CHOUDHRI: My search is not working. It's 26 pages. Is this being shared, Your Honor?

THE COURT: How are you all logged on?

MR. CHOUDHRI: Are you logged on? Should I read it to you or show it to you? What would be best for you?

THE COURT: She can either plug into the HDMI cable, or she can go to Goto Meeting, which is pretty easy to show it that way, whichever she wants.

While she's organizing that, what is your next exhibit?

MR. CHOUDHRI: Your Honor, I have an email here from a Charles Mansour at Fidelity National Title. He's the closing attorney. And in this email, he says, without an active case alleging alter ego, he, Osama, is merely slandering your title, preventing you from selling the property --

THE COURT: How is an email from somebody at Fidelity admissible in court?

MR. CHOUDHRI: It's emailed to me, Your Honor.

THE COURT: I don't care. How is it admissible in court?

MR. CHOUDHRI: Okay. I'll move on.

THE COURT: Yeah. Is not admissible.

MR. CHOUDHRI: There's also a final judgment, Your Honor, Hira Azhar v. Ali Choudhri. There's a final judgment in the divorce action dated November 2019. And that states that the case that was filed in 2015, where over 30 or 40 defendants were listed, all my entities, had no jurisdiction, and I was divorced. And the Court never had -- I was divorced in 2012, so the 2015 case that was filed sponsored -- the sponsored litigation by Osama was not -- and then there's also a Supreme Court order that said it was done with ill-intent and frivolous actions, and I have that attached to it. I also have the August 2023 order from the Court of Appeals that my attorney, Gregg Costa, argued and the Court of Appeals upheld the judgment, saying that I was divorced as of 2012.

So from 2015 to 2023, I was under this clout that this woman is my wife.

THE COURT: Hold on, hold on.

MR. CHOUDHRI: All sponsored --

THE COURT: Wait, wait. Hold on a second. What are you all trying to do?

UNIDENTIFIED SPEAKER: I'm just trying to plug in the HDMI.

THE COURT: The HDMI cable is in the door. There's certainly one in the front door. There may be one in the back

door, but you will not need to deal with the back of the monitor. It needs to plug into your laptop or you can go to GoTo Meeting. I know there's an HDMI cable in the front one if you want.

Go ahead. So --

MR. CHOUDHRI: So, Your Honor, there's a --

THE COURT: I'm going to admit all the documents out of the divorce without admitting any of your characterization of what they say as part of your argument, one which I don't buy, but one which I think these are relevant to your argument, so you can have that on appeal. So I'm going to admit those. Go ahead.

(Final judgment in divorce action admitted into evidence)

Okay. We have the deposition that's now up. August 19th of 2019 in 2015-36895. Now, what pages do you want to offer and lines?

MR. CHOUDHRI: The discussion on Page 19, Your Honor, Line 18.

THE COURT: Line what?

MR. CHOUDHRI: If you go down to -- scroll down, please. Okay. This is where the judge says, "In 20 years I've never heard of or seen anybody have a loan contract with a blank, and that's been represented in this Court today, that you have a loan to this lady with a blank, never seen it. And I know what's going on. I need a number from you to sell it."

THE COURT: How is the judge's statement about what she has seen or not seen evidentiary in this hearing today? Under what rule is that evidentiary offer made?

MR. CHOUDHRI: Your Honor, they still are asserting I'm still married to this woman even though the appellate court has decided --

THE COURT: I want to know why the judge's statement is admissible. Not why -- I got the relevance. Why is it admissible?

MR. CHOUDHRI: There's testimony by Osama where he said he hadn't -- it was a blank --

THE COURT: Why is the judge's statement admissible?

MR. CHOUDHRI: I don't need it.

THE COURT: Then I'm not going to admit it.

MR. CHOUDHRI: Okay.

THE COURT: Okay. Go ahead.

Any other evidence you're going to offer?

MR. CHOUDHRI: Yes, Your Honor. I'm just getting a list that I have. Your Honor, I think you've already admitted the adversary complaint dated by George Lee if I'm not -- I don't know if I left that out, in the Western District alleging alter ego.

THE COURT: I'm sorry, tell me what document that is again.

MR. CHOUDHRI: That was an adversary complaint in the

Western District. Document Number 1 is Case Number 24-01039. It's the adversary complaint --

THE COURT: Any objection to that on the same relevance basis that others have been on?

MR. FUNK: I think the Lee adversary has already been admitted, Your Honor.

THE COURT: Think so?

MR. CHOUDHRI: No, that's what -- I just wasn't --

THE COURT: All right, anything else?

MR. CHOUDHRI: There's a -- there's a non-suit with prejudice for Cause Number 2011-25222.

THE COURT: Why is that relevant?

MR. CHOUDHRI: There was an alter ego action brought against my mom, my dad, myself, by Osama Abdullatif in the past, and then it was non-suit of prejudice. And then it's basically the same actions that are brought again in their recent assertions.

THE COURT: Okay. Any objection to authenticity? I'm going to admit it as part of his overall argument if it's authentic. It's admitted.

(Adversary complaint ECF Number 1 admitted into evidence)

MR. CHOUDHRI: There are emails between Michael Ballases and myself, and I'm not sure if emails are okay or not, Your Honor. I discuss the amount, formal demand of what's owed, what they're alleging was owed, pursuant to their Proof

of Claim.

THE COURT: Objections to the emails?

MR. FUNK: Same relevance objection.

THE COURT: Overrule. We'll admit them, again, for the purpose of supporting the argument that you're making, that I don't think is a valid argument, but, again, I don't think it's a not -- it's not a frivolous argument. It's just not one I've accepted, so I'm going to allow you to continue to offer the evidence in support of your argument.

(Emails admitted into evidence)

MR. CHOUDHRI: Your Honor, I could substantiate and establish what I think you would believe me if you heard --

THE COURT: It doesn't matter whether I believe --

MR. CHOUDHRI: -- evidence.

THE COURT: -- you or not. I'm not going to end up ruling on this. The question is, should I remand the case, or should I send it to the Western District? And I don't think this influences that decision --

THE COURT: I'm sorry. I'll move on.

THE COURT: -- because -- for the reasons that I've gone through before. But I -- having said that, I'm going to let you build your record to support the position that you're taking. So let's move ahead.

MR. CHOUDHRI: Your Honor, there is a -- Your Honor, there is a couple of transcripts of hearings. One is a

transcript of hearing for the motion for temporary injunction dated September 30th, 2019, in Cause Number 2019-61734.

THE COURT: And what portions of that transcript are relevant?

MR. CHOUDHRI: The portions of that transcript that are specifically relevant, Your Honor, is where Harold Polk, in 2019, who is a borrower of one of my entities, admits to -- he was attempting to get an injunction to stop collection, and he admits to signing the note and those documents. Subsequent to that, once Osama Abdullatif owns that claim of Harold Polk, and funds Harold Polk, there is a new position taken that that note was not signed by Harold Polk, even though under oath in testimony he testified he signed the note and the pledge agreement.

THE COURT: So you want to offer the part of the transcript where he says he signed the note?

MR. CHOUDHRI: The note and the pledge agreement. The --

THE COURT: The note and the pledge agreement. Any objection to admission to the portion of the transcript where he says he signed the pledge and the note?

MR. CHOUDHRI: And the deed of trust.

THE COURT: And the deed of trust.

MR. FUNK: It's the same relevance objection.

THE COURT: Same ruling. I'll admit that portion of

the transcript only. Go ahead.

(Harold Polk admission portion of transcript 9/30/2019 admitted into evidence)

MR. CHOUDHRI: And then, Your Honor, there is a -- there is a place where -- there is a request to, once Osama Abdullatif controls that claim, there is a request and a claim made in Case Number 2019-61734 that Harold Polk did not sign that note. Once Osama becomes the owner of that claim --

THE COURT: That's a portion of the transcript?

MR. CHOUDHRI: There is a pleading, Your Honor, that was submitted by --

THE COURT: So what pleading is that?

MR. CHOUDHRI: It's plaintiff's request to inspect documents dated March 20, 2017, Cause Number 2019-61734. And that's one of the exhibits we attached.

THE COURT: Let me see it.

MR. CHOUDHRI: Let me see that.

THE COURT: Can I see that, please?

MR. CHOUDHRI: Yeah. And Dalio was one of the defendants in that case.

THE COURT: And what I want to know is, it's odd that a request to inspect would say someone didn't sign something, but if they're simply asking for proof of it, I don't know why that's inconsistent. So that's why I want to see what this is.

MR. CHOUDHRI: Yep.

THE COURT: So show me the statement in here where they say he didn't sign it.

MR. CHOUDHRI: So based on information and belief -- so Dalio Exhibit A attaches a copy of the alleged (indiscernible) of the defendant's filed in trial court's records, Dalio Exhibit A.

THE COURT: Okay. I see it.

MR. CHOUDHRI: And then --

THE COURT: Any objection to the admission of this for the same reason as others?

MR. FUNK: Same reasons.

THE COURT: It's admitted for the purpose of showing his argument that this is a massive attack on him and that that should influence our decision on remand or transfer.

(Dalio Exhibit A portion admitted into evidence)

THE COURT: What do you have next?

MR. CHOUDHRI: There's a transcript of a hearing dated September 22nd, 2021, Cause Number 21-60082, in regarding Grove Enterprises, LLC, which is Harold Polk-related company that Osama Abdullatif controls at Cling where there was a statement -- so, in 2019, Harold Polk admits signing this note and deed of trust before Osama was the plaintiff. Then in 2021, Grove Enterprises is in bankruptcy. And Osama's lawyers go to court representing -- making a statement that note that he admitted signing is a forgery in front of Judge --

THE COURT: So let me ask you something. You've introduced a wealth of evidence that you're going to be using before another court to demonstrate that I should keep it. And I've told you that that's not going to justify it. It seems to me that you've now made a pretty complete record of this argument. Isn't the rest of this just cumulative of your argument that you've demonstrated in your offer? Plenty of documents. Do we need more?

MR. CHOUDHRI: Your Honor, I would like to admit evidence that I've attached the lis pendenses that were signed by --

THE COURT: I've admitted all the lis pendenses.

MR. CHOUDHRI: Even the ones by Osama Abdullatif and Hira Azhar?

THE COURT: I'm admitted all the lis pendenses that you've attached.

MR. CHOUDHRI: Okay. Fine. Thank you.

THE COURT: But it seems to me we are now into very cumulative kind of issues here. You've built your record.

MR. CHOUDHRI: I understand, Your Honor.

THE COURT: Are you okay with that?

MR. CHOUDHRI: Thank you, Your Honor.

THE COURT: Okay. Thank you. All right.

MR. CHOUDHRI: Just one thing I wanted to bring to Your Honor's attention, and this is in no way -- I'm not asking

Your Honor to do anything. I just wanted to bring it to your attention. Around October the 3rd or 4th, I was here for a deposition, and I learned from -- in conversations, I learned from John Quinlan that you were his counsel a while back, which I just want to mention it. I don't think that's an issue, but I just wanted to discuss --

THE COURT: And just for the record, I was John Quinlan's lawyer before I took the bench. I would say -- I don't know the exact years, but I represented him in three or four matters in the 1996 to 2002 time frame, if that bothers anyone. I don't think it's a basis for recusal, but if anybody wants to move, you can --

MR. CHOUDHRI: No, Your Honor.

THE COURT: -- you can move.

MR. CHOUDHRI: I just -- he actually said you were his best lawyer he's ever had.

THE COURT: So all right.

MR. CHOUDHRI: And I also wanted to just bring it to your attention, Your Honor, when Omar -- so, Khawaja was in bankruptcy, and there was a loan with Wells Fargo that I facilitated to prevent a multi-million-dollar deficiency for Khawaja. And they had exited bankruptcy, and I had done a deal with them, and then they had gotten an injunction against them and filed bankruptcy. Again, the judge, I think Karen Brown, but that case landed in front of you, Your Honor, and I believe

in that case they had sued George Lee and Serena, and I believe, Your Honor, it was -- I'm looking at the transcript here on -- I just wanted to bring it to your attention just so I have this. On January the 2nd, 2014, where I think Khawaja had hired, I believe, Ron Summers, and in that case he had sued George Lee and Serena Yu, and I think Your Honor had actually just brought up that -- and then I believe Your Honor just on his own recused yourself from that case.

THE COURT: As I recall, and it's been a long time --

MR. CHOUDHRI: I can pull up the transcript.

THE COURT: -- at that point she was my next-door neighbor, and we shared a fence line. I don't remember what year she moved, but it's been more than six or seven years and I haven't spoken to her, and there's no longer any issue of having a next-door neighbor where you might worry about whether you're really going to affect the neighborhood. She's gone.

MR. CHOUDHRI: I think you're fair, Your Honor.

THE COURT: So I'm not going to recuse based on that.

MR. CHOUDHRI: I just wanted to --

THE COURT: But again, you can file a motion to recuse if you wish.

MR. CHOUDHRI: No, Your Honor, I just wanted to -- because I think we had some discussion. I went back and looked at the transcript, and you actually had recused yourself from that case, then have been --

THE COURT: I did, because she was my next-door neighbor at the time, and I just didn't think it was -- I mean, she was like my literal next-door neighbor. I didn't think it was prudent to worry about that.

MR. CHOUDHRI: Sure.

THE COURT: I'm no longer worried about it. I haven't talked to her since then. But if you want to file a motion to recuse, I mean --

MR. CHOUDHRI: No, Your Honor.

THE COURT: -- it's -- you're free.

MR. CHOUDHRI: No, absolutely not. No, sir. I just --

THE COURT: Okay.

MR. CHOUDHRI: Because I mentioned -- just to err on the side of caution, I wanted to bring it to your attention. I have no issue with it. Just if anyone else does.

THE COURT: All right.

MR. CHOUDHRI: And --

THE COURT: Ms. Webb, let me -- thank you, sir. Ms. Webb, let me hear your remand case, then.

MS. WEBB: Thank you, Your Honor. I'll be brief, frankly, because I know you've read your papers -- or you've read our papers, and frankly, Judge Robinson has already ruled on this. We don't think that there was a proper basis for removal in the first place. But in any event, Your Honor, it's

untimely based on Bankruptcy Rule 9027. This was filed way beyond the initial period for removal.

In addition, we believe that the permissive factors strongly favor remand as set forth in Judge Robinson's opinion, both on the initial remand and in connection with the motion for reconsideration. So there's been nothing that has changed since Judge Robinson reviewed this issue and decided to remand. So we respectfully submit that Your Honor also remand these cases.

THE COURT: Do you have any objection to what I've described as a delay until January 1 of the effect of the remand to where if Judge Robinson chooses to intervene and determine that the stay applies or whatever he might decide, we give him plenty of time to get that done?

MS. WEBB: No, Your Honor. We don't have an issue with that.

THE COURT: Thank you. All right. I don't think -- what is your argument on the timeliness? Because I haven't really heard you address that question.

MR. CHOUDHRI: Sure, Your Honor. So the fact is, Your Honor, they are actively asserting to third parties as they did in your --

THE COURT: What is your argument on the timeliness of the removal under the rules?

MR. CHOUDHRI: George -- the first removal was the

Proof of Claim because they availed themselves to the jurisdiction by filing the Proof of Claim, claiming that all these entities are alter egos in the Proof of Claim that I have here. And I can hand you the copy.

THE COURT: Yeah, my question is the timeliness, when of this removal? You removed it on November the 4th, right? How is that timely under the rules?

MR. CHOUDHRI: Because Your Honor, I believe it was timely because what Ms. Webb is not discussing or addressing is the adversary that George Lee filed against Texas RIET and Ali Choudhri alleging alter ego. That came after. That came after.

THE COURT: So take me to the rule and just show me why it's timely.

MR. CHOUDHRI: Honestly, Your Honor, I don't know. I just believe that, you know, --

THE COURT: Well, I mean, it's your burden to demonstrate you had a timely removal. The rules are pretty plain. They're in 9027. Tell me if it's a timely removal. If it's not a timely removal, we're done, right? So tell me what your answer is to timeliness.

MR. CHOUDHRI: Your Honor, it's a core -- it's an issue as it relates to the bankruptcy of the estate, and so if there --

THE COURT: But there's a time limit for removing

matters. Did you meet it?

MR. CHOUDHRI: I believe I did, Your Honor, because you're actively making --

THE COURT: Then show me how you met it under the rule. Take the rule out and show me.

MR. CHOUDHRI: Your Honor, my answer to that without -- I may leave things out that I may not be fully aware of right now. My answer to that would be that they are continually interfering with the estate and violating --

THE COURT: Take me to the rule and link this argument to the rule on timeliness of removal.

MR. CHOUDHRI: So Your Honor, I was not served -- the new suit that was filed against me in the Western District took place after the case -- after the case was removed and they filed their remand. There was a new case filed against me in Texas REIT and that's the adversary.

THE COURT: A new adversary proceeding or a new bankruptcy case?

MR. CHOUDHRI: A new bankruptcy case, Your Honor.

THE COURT: What was the new bankruptcy case?

MR. CHOUDHRI: No, no. No, no, the adversary I meant.

THE COURT: Okay. But I think --

MR. CHOUDHRI: It's a bankruptcy adversary.

THE COURT: But I believe that under both 9027(a)(2)

and 9027(a)(3) that it triggers off of the date when the bankruptcy case was filed to which you're trying to remove it, right? And so in this case, tell me when the case was filed and whether this was timely removed under 9027(a)(2) or (a)(3) or some other reason why it was timely under the rules.

MR. CHOUDHRI: Your Honor, I would expect that it's related to jurisdiction. It's related to the issues the Court --

THE COURT: There's jurisdiction under 1334 if you're correct. Well, if you're incorrect over whether it's an alter ego, then there's 1334 jurisdiction. If you're correct, then there is no 1334 jurisdiction. Nothing to do with whether the removal was timely. Tell me whether the removal was timely.

MR. CHOUDHRI: So the claims they've made, Your Honor, came after the bankruptcy filing.

THE COURT: So the claims they made or the lawsuits they filed?

MR. CHOUDHRI: The lawsuit.

THE COURT: Okay. So that's going to be governed by 9027(a)(3). So tell me why this was timely under 9027(a)(3).

MR. CHOUDHRI: So, I believe that the George Lee case, and there are some other cases that I can pull, Your Honor, that they filed -- that were filed alleging the alter ego. And that's why -- if your question, Your Honor, is was this filed within 30 days or within 90 days or whatever

period of the bankruptcy --

THE COURT: Well, you're telling me they were filed after. I showed they were filed in 2012, which makes it before. But you tell me what was filed after.

MR. CHOUDHRI: So, Your Honor, the removal that Judge Robinson remanded was after the Proof of Claim.

THE COURT: I want to know --

MR. CHOUDHRI: And then there was an adversary filed after that, Your Honor.

THE COURT: I don't care about an adversary filed after it.

MR. CHOUDHRI: Okay.

THE COURT: But 9027(a)(2) deals with a civil action that had been filed before the case was filed. 9027(a)(3) deals with a civil action that was filed after the bankruptcy case was filed. You're telling me they filed new claims, so it's governed by (3). The remove -- the lawsuit had already been pending under (2). So assuming you're right under (3), was it timely under (3)?

MR. CHOUDHRI: I would believe it is based on the George Lee adversary.

THE COURT: Why? Okay, now, take me to the rule that says you have 30 days to do it. Right? Did you file it within 30 days? Not of that adversary, but of when the claim got filed in 24-3224 or 24-3225, was it a 30-day removal?

MR. CHOUDHRI: I don't know, Your Honor. I was probably more focused on the violation of the stay and trying to stop the interference of --

THE COURT: Exactly. That's the point I've been making all day. I'm glad that we're coming to the same point. I think you are worried about the stay violation. And I want to preserve that for you, but that doesn't mean you can remove an error as a way of dealing with the stay violation. If there's a stay violation, you take it up in the Court where that stay injunction got issued, which is with Judge Robinson. It's something you haven't done. You don't remove a case in violation of the rules.

Okay. I've heard plenty. I'm going to stick with the ruling that I thought I was going to make when I came out, which is --

MR. CHOUDHRI: Your Honor, may I request one thing if it's okay?

THE COURT: Go ahead.

MR. CHOUDHRI: Is it possible to have your ruling effective -- I will move today or tomorrow, immediately, no later than immediately, to Judge Robinson to deal with the stay. And I can't control when I get the hearing with Judge Robinson, so I would ask if you could abate your ruling until Judge Robinson could decide.

THE COURT: I'm not going to abate it indefinitely.

MR. CHOUDHRI: You don't have to abate indefinitely.

THE COURT: I said I'm going to abate it until January 1.

MR. CHOUDHRI: Your Honor, I --

THE COURT: And here's the point. It shouldn't have been removed at all. I don't know that I should even be doing that. I'm doing that, frankly, because Ms. Webb is not going to disagree with it. An improperly removed case, they're entitled to simply a remand on. You sat on your rights to argue that they violated the stay, but your rights need to be vindicated before Judge Robinson. So no, I'm not going to delay it any further than that. I think I'm stretching what I'm supposed to do with that.

MR. CHOUDHRI: Would January 15th be okay? Because I can't --

THE COURT: No. No.

MR. CHOUDHRI: I'm not sure when I get a hearing in front of Judge Robinson.

THE COURT: Well --

MR. CHOUDHRI: That's my biggest concern.

THE COURT: You've waited. You made the error. I'm not going to make them be punished for your error.

MR. FUNK: Could we be heard on the timing issue, Your Honor --

THE COURT: On the which issue?

MR. FUNK: -- before we finish?

THE COURT: Go ahead.

MR. FUNK: Your Honor, can we ask that you only stay it -- excuse me -- until the December 19 hearing with Judge Robinson? If he wants to raise the stay violation with Judge Robinson, we'll waive any arguments as to notice, and we'll agree it can be raised at the December 19th hearing.

If, for some reason, Judge Robinson won't hear it or won't agree to a rule on December 19th, then we'd be okay with January 1. But if he will, please just ask that you leave it at December 19th. I think he'll address it at that time.

THE COURT: Yeah. I'll put an order up on the screen. We'll see if parties object to it. But I'm not going to -- I'm not going to take this away from Judge Robinson. I'm going to respect what he needs to do. And let's see where it goes. Let me put an order up and see whether the parties are going to object to this. But I'm trying to take a practical approach to what the problem is.

MR. CHOUDHRI: Your Honor, can I also make a request today? Is it possible -- I did mediate a case with you that was successful, where I was a creditor, and it was done by a student, and it was successful. Is it possible that you could -- if the parties would be wanting to end this lifelong jihad war for whatever reason, that you could indulge us with a sitting judge for mediation, where the parties would attend the

mediation? And --

THE COURT: That's a request to make to Judge Robinson. I'm not going to have a case before me that will create mediation. Why don't you have a seat, and let me see if I can get this order done?

MR. BALLASES: Judge, just real quick it says 333rd.

THE COURT: Oh, typo, yeah, thank you.

MR. FUNK: Judge, if I could just insert, so while we waive the notice provisions, obviously there needs to be a motion to request the relief he seeks, and it's made in that court. We're not waiving that. In other words, we don't want him to present an oral motion on December 19th.

THE COURT: So I'm intending, as you can see, to turn this over to Judge Robinson as to what he wants to do about timing. If he chooses to take no action, then on January 1, my order will be effective. If he acts before January 1, then my order will be effective when he acts. If he asks for more time, or declares there is more time, I'm leaving him free to do that.

For example, he wants -- this is just by way of example, he hears it on December 19th, and he wants a month to rule on it, it's up to him. I'm not trying to control what he does. And I want to preserve all the parties' arguments. I am not expressing a view as to whether the automatic stay applies or should be lifted today. I'm simply saying that is all in

Judge Robinson's court.

If on January 1, the case is remanded, then it may be -- because no order has been issued by Judge Robinson, and he hasn't asked for additional time, the parties may be in a free-for-all, but that's what Judge Robinson gets to decide, not what I get to decide.

I'm remanding the case for a variety of reasons. One is I don't believe it was timely removed. In the absence of timely removal of a state lawsuit precludes this Court from exercising substantive jurisdiction over any matter other than the remand of the case.

Number two, I believe that remand is in fact the proper order -- the proper process that should be followed, because this removal was done for the purpose of vindicating the automatic stay. That is a matter that should be raised in the Court in which the stay arose, not in a different court. This case is pending in the Western District of Texas. The Western District of Texas should determine whether to lift the stay, whether to not lift the stay, and whether the stay applies. That is not the proper role of a court to which the case has been removed when in fact the purpose of the removal was simply to vindicate automatic stay issues.

I'm also remanding the case because the removal is inconsistent with the factual theory alleged by the removing party. The removing party alleges that they are not alter

egos. If they are not alter egos, then there is no subject matter jurisdiction because this will have no effect on the bankruptcy estate. If, on the other hand, they are alter egos, then it's going to be stayed, or the stay is going to be lifted, whatever Judge Robinson decides.

But I think under the circumstance where I have that kind of an inconsistency that plays the full role as to where this case is going, that that is a determination that is realistically one that arises out of the automatic stay and not out of any other issue. So for those reasons, I am remanding.

Now, with that said, and I am -- I believe that Mr. Choudhri has fully reserved his objections to this order for all appellate purposes, so I'm not looking for sort of a restatement of something that applies already. What I would like to know is whether anyone has any objection other than ones already made to the issuance of this order.

So we'll start with Mr. Choudhri.

MR. CHOUDHRI: Your Honor -- Your Honor, just with what you said, I appreciate it. I'll just ask if the order -- I won't be able to control when a hearing gets set, so with just a caveat that whenever the hearing is set or requested that they would waive -- because it may not be that day on December 19th, it may be a different date, but they would waive -- I believe they said they would waive --

THE COURT: Well, they agreed to waive it to have it

determined early. If it's going to be delayed, they haven't agreed to waive it. And so they would have due process rights. So the only reason I can do what I've done is they've agreed to that waiver, so I'm not going to make a change.

MR. CHOUDHRI: All right. Will they agree to waive it up until January 1 if I can get a hearing any time in between?

THE COURT: They have agreed to waive it for the December 19th hearing. I think they're trying to make a single trip to Austin, but that's up to them.

MR. CHOUDHRI: That's what I assume.

THE COURT: You'll have the ability to argue that to Judge Robinson. All I'm saying is if he schedules it for them, they have waived it. They don't want to give him that accommodation. He can set it however he wants.

MR. CHOUDHRI: Right. And that was the only thing. Let's say he sets it for the last week of December, and then they haven't waived the notice, so I was just going to --

THE COURT: Well, if he sets it for the last week of December and you file it on Christmas Day, they may want to have an objection. I don't know. I'll leave that up to them, and the due process clause of the Constitution. So I'll overrule that objection. What have you got next?

MR. CHOUDHRI: That was it, Your Honor. That's all I can think of.

THE COURT: Thank you.

MR. CHOUDHRI: Just that if it was a setting that they would, between now and the end of the year, they would waive the notice.

THE COURT: I --

MR. CHOUDHRI: Because I may not be able to --

THE COURT: I think that I'm giving Judge Robinson all of the latitude I can possibly give as to when he's going to schedule it and what the effect is going to be, and I think that's the right answer. Thank you.

Ms. Webb?

MR. FUNK: Your Honor, could I address this one briefly?

THE COURT: Go ahead.

MR. FUNK: There is a -- I think there's, on Paragraph 3, there may be a typo there where Judge Robinson determine instead of determined.

THE COURT: I agree.

MR. FUNK: The other request -- let me first point out, we don't -- I don't have an objection to the order, as you've typed it out. I have a request to add to it based upon our papers, which we made a request that Your Honor issue an order to prevent the defendants from again removing the case to federal court based on the same grounds as their prior two times they've removed it.

As you noted, it would substantively be untimely again if they did so, it'd be improper based upon the same grounds, which it is this time as well. And if you don't make that order, we're going to be here yet again because this hearing has been set eight times in state court since Texas REIT filed its bankruptcy.

And for a variety of reasons, it's been moved and continued and delayed by the efforts of the defendants. Two of those were the --

THE COURT: Let me just ask, Mr. Choudhri, you agree this is the last time these cases are going to be removed, right? You're not going to try and remove these same ones again, are you?

MR. CHOUDHRI: I have no intention, Your Honor, but I don't know what other claims they can do, what other actions they can bring while my rights remain. Again, I don't know. I have no intention, Your Honor, as I sit here and stand in front of you, I have no intention of doing that, Your Honor, whatsoever.

THE COURT: Okay.

MR. FUNK: They're final judgments, Your Honor. There's nothing else to do but to pursue collection of the final judgments --

MR. CHOUDHRI: Well --

MR. FUNK: -- on some other basis that could cause

removal that would come up.

MR. CHOUDHRI: The judgments are superseded, Your Honor. If they file actions against other debtors, I don't know what they can or can't do. I don't know what other entities may have to file bankruptcy based on the circumstances they put me in. Their goal was for me to be in personal bankruptcy. That's what they've -- that's what their mission has been to me. And if they continue to file claims, I just --

THE COURT: I think that solves what you're both telling me. Right? I'm going to bar you from again violating Rule 9027. You had zero reason today. Once you comply with Rule 9027, if they can, then they do it. If they do it wrong, they'll be in contempt.

MR. CHOUDHRI: Your Honor, is there any other application besides 9027? I thought there was another application of a removal.

THE COURT: There is no other basis, as far as I know, for removing a bankruptcy case.

MR. CHOUDHRI: Okay. Just --

THE COURT: Thank you.

MR. CHOUDHRI: And just one question, Your Honor. As far as if it's determined that the automatic stay, and I have more evidence of things that they've done, the attorneys and the parties on the other side, where would I come to for a sanctions motion? Would it be with you? It would be --

THE COURT: Judge Robinson.

MR. CHOUDHRI: Okay. Thank you.

THE COURT: Thank you.

MR. FUNK: I don't have any more comments on the order. I do want to have one more issue I want to raise with the Court after you're finished with the order.

THE COURT: Mr. Ballases?

MR. BALLASES: So the only thing I'd like to address on the order is given the parties' propensity to file stuff at the last minute, I'm hesitant, so he may file -- I don't want him to file a motion regarding the lifting of the stay on the morning of the 19th or the night of December 18th. I'd like to have some time to be able to review it. So maybe if you could put a deadline for him to file his motion regarding the stay, that way we have some leeway.

THE COURT: I'm not going to do that. I'll let you make that argument to Judge Robinson.

MR. BALLASES: Okay.

THE COURT: Ms. Webb?

All right, we'll get this order issued later today. Mr. Funk, you had another argument you wanted to raise? Or an issue?

MR. FUNK: Yes, Your Honor. There's just one more issue I want to raise to your attention. Both those --

MR. CHOUDHRI: I'll just make one objection,

Your Honor. It's just -- there should be one attorney on the --

THE COURT: Go ahead and tell me your objection.

MR. CHOUDHRI: Your Honor, my objection would be one attorney. If Ms. -- the -- over there in Zoom is representing Mr. Mokaram in these arguments, and if Mr. Funk is also duplicating that, it should be --

THE COURT: So I ruled against him. So I'm not sure that you want to make that argument. But that's fine. One lawyer per side.

Go ahead, Mr. Funk.

MR. FUNK: Thank you, Judge. Again, as an officer of the Court, I want to raise an issue with Your Honor. At our last hearing, Mr. Choudhri represented to you that he didn't know where his lawyer was, that they had tried to find him and he wasn't responding. He thought he might even be hospitalized. They didn't know why he wasn't appearing.

His lawyer sent me an email later that same evening that I'd like to give to Your Honor where he represented in his email that he wasn't there because he had been terminated.

UNIDENTIFIED SPEAKER: May I speak to that issue?

THE COURT: Just hold on.

MR. FUNK: Let me finish please. One attorney per party.

UNIDENTIFIED SPEAKER: Sorry.

THE COURT: I have no idea what this email is about. I don't --

MR. FUNK: Well, let me give -- what I also wanted to do is give Your Honor -- I have --

THE COURT: No. No. If you have a motion you want to file that somebody violated Rule 11 or that somebody should be sanctioned, file it. We're not going to do it today and we're not going to deal with that issue not filed. Everybody's known about it. Don't need a response to it. I'm not -- just not taking it up. We're going to file a procedure.

I'm going to issue this order later today. I thank you all for coming in. We're in recess until eleven o'clock this morning.

MR. FUNK: Thank you, Judge.

THE COURT: Thank you.

MR. BALLASES: Thank you, Judge.

(Proceedings concluded at 10:53 a.m.)

* * * * *

**C E R T I F I C A T I O N**

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_______________________________

ALICIA JARRETT, AAERT NO. 428     DATE: December 5, 2024

ACCESS TRANSCRIPTS, LLC